### MURPHY et al. v. WARNER BROS. PICTURES, Inc.

No. 9304.

Circuit Court of Appeals, Ninth Circuit.

June 7, 1940.

Harold A. Fendler and Roger Marchetti, both of Los Angeles, Cal., for appellants.

Herbert Freston, J. R. Files, Ralph E. Lewis, and John P. McGinley, all of Los Angeles, Cal. (Freston & Files, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

The plaintiffs claim an infringement of their copyrighted play entitled "The Nightmare". The defendant produced a talking picture version thereof entitled "Sh—the Octopus". A written contract was entered into in New York on April 30, 1928, between the plaintiffs and defendant's assignor conveying motion picture and sound rights in the plaintiffs' copyright. The contract provided that it should be construed according to the laws of the United States and of the state of New York.

The difference between the parties is as to whether or not this conveyance authorized the production of the talking motion picture by the defendant. A transfer of motion picture rights has been held to include the right to produce talking motion pictures. L. C. Page & Co. v. Fox Film Corp., 2 Cir., 83 F.2d 196. The plaintiffs rely upon an alleged custom in the motion picture industry in New York to modify or, at least to explain, the items of the contract. The defendant denies the existence of such a custom.

The trial court granted defendant's motion for summary judgment in its favor, from which plaintiffs take this appeal. For convenience we refer to the parties as plaintiffs and defendant and will refer to the defendant as though it was a party to the original contract which was assigned to it.

If, as the plaintiffs contend, the custom requires an interpretation of the contract which would exclude talking motion picture rights and, if in the absence of such custom such rights were included in the transfer, it is clear that the issue between the parties as to the existence of the custom is a material issue and that the motion for a summary judgment should have been denied. Gravenhorst v. Zimmerman, 236 N.Y. 22, 139 N.E. 766, 27 A.L.R. 1465; Charles Blum Adv. Co. v. L. & C. Mayers Co., D.C., 25 F.Supp. 934; Refractolite Corp. v. Prismo Holding Corp., D.C., 25 F.Supp. 965. Portions of the contract are set out in the footnote.[1]

It will be noted that the contract recites that the purchaser is desirous of acquiring all the motion picture rights and that the contract purports to grant "exclusive, complete and entire motion picture rights and the exclusive right to use in conjunction with said motion picture version, such devices for the recording, and/or reproduction of sounds as may from time to time be utilized as a part of the presentation and exhibition of the photo plays". The contract reserves the right to the reproduction of sound by radio. We think it clear that

---

[1] "Whereas, the purchaser is desirous of acquiring all of the motion picture rights in such writings from the owner;

"Now therefore, in consideration of the premises and of the mutual covenants herein contained, the parties agree as follows:

"1. The owner hereby agrees to, and by these presents does grant, bargain, sell, assign, transfer and set over (all hereinafter termed 'grant') to the purchaser, the following rights in such writings:

"(a) the exclusive, complete and entire motion picture rights, including common law and statutory copyright in the same, throughout the world, together with all the benefits of the copyright in such writings, the title and the theme thereof, and of all remedies held thereunder, with respect to such motion picture rights;

"(b) the exclusive right to make motion picture versions thereof and to produce and reproduce one or more motion picture photoplays, including negatives and positive prints made therefrom (all hereinafter termed 'photoplays'), and to adapt, arrange, change, transpose, add to, and subtract from the said writings and the title and theme thereof to such extent as the purchaser may deem expedient, and the exclusive right to use, in conjunction with said motion picture versions such devices for the recording and/or reproduction of sounds as may from time to time be utilized as a part of the presentation and exhibition of the photoplays, together with the right to utilize any music or orchestration, score or numbers in connection with said pictures as may be desired. Nothing herein contained shall be deemed to grant the right to utilize any device for the recording or reproduction of sounds by radio or other means than such as are utilized as a part of the entertainment connected with the projection of the pictures upon the screen, simultaneously therewith;

"(c) the exclusive right to distribute, exhibit and otherwise exploit and dispose throughout the world of such motion picture versions;".

the phrase "complete and entire motion picture rights" includes the right to the production of dialogue. In connection therewith we are content to follow the decision of the Circuit Court of Appeals for the Second Circuit in L. C. Page & Co. v. Fox Film Corp., supra. To avoid this conclusion that motion picture rights include the right to produce the dialogue or that sound rights include the dialogue, plaintiffs rely upon custom in the motion picture industry in New York. The allegations in that regard are so important that we set them out in the footnote.[2]

 We assume that under the law the copyright owner has the right to sell such portion of his copyright as he desires and therefore the allegation that it is the custom in the motion picture industry to sell the class or classification of motion picture rights desired is immaterial. The second alleged custom is that "the sale, license or grant of motion picture rights did not then include sound or talking or dialogue rights unless expressly provided for and enumerated at the time of sale."

The third custom alleged is that the sale of "motion picture rights", together with the right to use sound, did not include dialogue and talking rights "unless expressly provided, enumerated and granted at the time of sale".

 It is almost universally recognized, as it is in New York, that trades custom with reference to meaning of terms used in the contract entered into by persons engaged in that trade is admissible in evidence to explain the meaning of the contract. Wigmore on Evidence, § 2463; Williston on Contracts, Rev.Ed. § 661; Electric Reduction Co. v. Colonial Steel Co., 276 Pa. 181, 120 A. 116; Robinson v. United States, 13 Wall. 363, 20 L.Ed. 653; Hostetter v. Park, 137 U.S. 30, 11 S.Ct. 1, 34 L.Ed. 568. That is to say, the ordinary significance of the terms used may be modified by proof of custom although this might change the legal effect of the contract. The allegations of the custom in the complaint go to the extent of alleging that a conveyance of "motion picture rights" would not convey the right to make a talking motion picture and that a conveyance of a right to use sound would not include dialogue or talking rights. But these allegations were qualified, as they must be, by the statement that these interpretations were inapplicable where the contract otherwise provides. We have not overlooked the fact that the alleged custom applies to

---

[2] "That at the time said agreement was executed and at the time said motion picture rights were granted by plaintiffs to said defendant corporation there were in existence and generally known to throughout the motion picture trade and industry three distinct separate sets and classifications of literary and dramatic rights which were at said time and place the subject of barter, purchase and sale throughout said trade and industry as follows, to-wit;

"'Motion Picture Rights', to-wit:

"(1) The right to use literary or dramatic compositions in motion pictures.

"'Sound Rights', to-wit:

"(2) The right to utilize sound effects in connection with the use of literary or dramatic compositions in motion pictures.

"'Dialogue rights' and 'Talking rights', to-wit:

"(3) The right to use speech and dialogue in connection with literary or dramatic compositions produced in the form of 'talking' motion pictures; and there was on the day said contract was entered into as aforesaid a general, uniform, well-recognized, trade custom and trade usage in the motion picture industry to purchase and/or sell the particular class or classification of motion picture rights so desired to be purchased or sold and in said motion picture trade and industry at said time and place there was a general trade usage and custom that the sale, license or grant of motion picture rights did not then include sound or talking or dialogue rights unless expressly provided for and enumerated at the time of sale and that the sale, license or grant of 'motion picture rights' together with right to use 'sound' in conjunction therewith did not include 'dialogue' and talking rights, unless expressly provided, enumerated and granted at the time of sale and said general trade usage, and customs were at said time and place well known throughout the motion picture industry and said agreement hereinabove referred to was made and entered into by each of the parties thereto with full knowledge of said trade customs and trade usages and with the intention that the same should apply to said agreement; and none of the parties hereto intended in and by said agreement aforesaid that 'dialogue' or 'talking' rights should be or were included in the grant, license and sale more particularly referred to in said agreement."

the method of making written contracts and the enumeration therein of the various rights granted, and that the contract must not only expressly provide for the transfer of the talking rights but such rights must be "enumerated" in the contract. This is stretching the function of custom beyond that recognized by the law. It makes no difference how the industry is in the habit of phrasing their contracts any more than does the character of paper upon which they are written. Custom, to be effective, must be one with relation to the meaning or effect of the terms used in the contract. The allegations of the complaint as to the custom, so far as material, are that a grant of "motion picture rights" and "sound rights", without more, do not include the right to reproduce dialogue in a talking motion picture.

The plaintiffs cannot escape the obvious conclusion that a talking motion picture is a motion picture and that each of the three subdivisions of these rights, alleged in the complaint, (pictures, sounds and dialogue) are included in the general right to produce a "motion picture". The sum of these rights constitutes the "entire" motion picture right. The contract expressly provides that the "entire" motion picture rights are conveyed by the plaintiffs to the defendant. It follows that the contract expressly provides for the conveyance of dialogue rights when it conveys the entire motion picture rights. It also expressly conveys the right to reproduce the dialogue when it conveys sound rights, as will appear from a consideration of the terms of the contract with reference to sound reproduction. The phrase is used twice in paragraph 1(b) of the contract (note 1). The second time the contract prohibits the purchaser from the "reproduction of sound" by radio. Obviously "sound by radio" here includes dialogue, for it cannot reasonably be assumed that parties had in mind merely to prohibit the ringing of bells, blowing of horns, tooting of whistles and beating of drums, which would be entirely unintelligible over the radio without the dialogue or picture.

Moreover, in construing the contract, it must be remembered that the production of "sounds", other than dialogue, is no part of the copyright hence, the conveyance of a right to produce "sounds" must be deemed to convey something that the grantor owned. It must be held therefore that the contract expressly conveys dialogue rights. The alleged custom as to the meaning of "sound" would therefore be immaterial when it is apparent on the face of the contract it is used by the parties in a different sense. Nothing in the New York cases cited by the plaintiffs conflicts with this view.

Judgment affirmed.