[Civ. No. 15879.   Second Dist., Div. Two.   Mar. 25, 1948.]

ROINC (a Corporation), Plaintiff, v. VENLAUR CORPO-
RATION, Defendant and Appellant; S. H. PRICE et al.,
Cross-defendants and Respondents.

Gerald Bridges for Defendant and Appellant.

George Manns and Hill, Morgan & Farner for Cross-defendants and Respondents.

MOORE, P. J.—The questions for decision are (1) whether letter No. 1 written by respondents expresses their total obligation to appellant; (2) whether it was so modified by their letter No. 2 written seven months later as thereby to enlarge their debt to appellant; (3) whether the court erred in ex-

cluding appellant's offer of parol evidence to prove that letter
No. 2 was intended as such modification of letter No. 1.

Respondents as real estate brokers in the city of Los An-
geles formulated a plan for the development of certain lots
situate at the northwest corner of Ventura and Laurel Can-
yon Boulevards. Their purpose was to create a first-class
commercial or shopping center on Ventura Boulevard with a
spacious parking area in the rear of the stores for the benefit
of the patrons who visit the shops. Lots 15 and 16 belonged
to Victor H. Davis. Lot 15 has a 220-foot frontage on Ven-
tura and Lot 16 adjoins it on the north. Lots 14 to 9 inclusive
lie to the west of Lots 15 and 16 and their owners will be
referred to as ''other owners.''

September 18, 1940, respondents negotiated a 50-year lease
on Lots 15 and 16 by Davis to appellant. Paragraph *Twelfth*
thereof provided that Davis and the other owners ''propose
to create certain vehicular parking areas and private streets
by the granting of reciprocal easements over the above de-
scribed premises'' for their common benefit. Lots 9, 10, 13
and 14 except the south 180 feet thereof were to be the park-
ing area. Across Lots 9 to 14 inclusive a private street 40 feet
wide would extend from the west side of Lot 16 to the western
boundary of Lot 9 and for a total distance of 150 feet along
the eastern boundary of Lot 14 at the rear of Lot 16. To make
the means of ingress and egress to the parking areas complete
it was provided (1) that a 45-foot street should extend from
Ventura northward through Lot 9 to the 40-foot private
street, and (2) a street 50 feet wide would extend along the
northerly boundary of Lot 16 to the 40-foot street on Lot 14.
Appellant agreed to pave at its own expense the 50-foot street
across Lot 16 within three months from the date of the agree-
ment between Davis and the other owners with respect to the
vehicular parks and private streets.

On September 27, 1940, respondents wrote a letter to appel-
lant as follows:

''As per verbal understanding the undersigned agree to pay
the cost of paving the street, as per map attached hereto, set
aside in that certain lease dated September 18, 1940, covering
the property described as follows:

''Lots Fifteen (15) and Sixteen (16) Tract 4541, in the
City and County of Los Angeles, State of California, as per
Map Book 49, Page 33, Records of said Los Angeles County;
between Victor H. Davis and Euda M. Davis as lessor and

Venlaur Corporation as lessee at the time and under the conditions provided for in said lease.

"We further agree to deposit a sum equal to the approximate cost of said paving with the R. A. Rowan & Company and to procure for you a letter to the effect that they will fulfill all of the obligations as set forth herein."

Eleven days thereafter R. A. Rowan & Company wrote appellant with reference to the foregoing promise of respondents, and advised appellant that the Rowan Company had on deposit "The sum of $500 to defray the cost of said paving" which sum would be paid "to the Venlaur Corporation, upon demand and at such time as the Venlaur Corporation can show written evidence of the completion of said paving and payment therefor, an amount equal to the cost of said paving. In the event the cost of said paving, as evidenced by receipted bills therefor shall exceed $500 Mr. S. H. Price and Mr. Leonard Woodward have further agreed to any cost in excess of $500 for this paving."

### September Letter Interpreted

From respondents' September letter followed by that of Rowan Company to appellant no meaning is fairly deducible other than that respondents agreed "to pay cost of paving the street" along the north side of Lot 16 and to deposit the approximate cost of such paving with the Rowan Company. An enlargement of respondents' obligation beyond payment of the paving cost would require a distortion of the writings. Their intention was emphasized by the understanding of the Rowan Company expressed in its communication to appellant which retained the writing without protesting that it did not accurately state the agreement. The language of a contract governs its interpretation. (Civ. Code, § 1638.) The intention of the parties to a written contract is to be ascertained from the writing alone, if possible. (*Ibid.*, § 1639.) A contract extends only to those things concerning which it appears the parties intended to contract. (*Ibid.*, § 1648.) And if it is in any sense uncertain it must be interpreted in the sense in which the promisor believed, at the time, that the promisee believed it. (*Ibid.*, § 1649.)

The instant controversy arose out of the subsequent agreement and letters of the parties. In April, 1941, an agreement was prepared by the attorneys of Rowan & Company whereby the owners and lessees of the commercial center granted reciprocal easements contemplated by the Davis lease in order

to create and establish the vehicular park and the private streets. By that instrument, herein referred to as the "parking agreement," it was provided that (a) the cost of "paving and grading the areas . . . shall be borne by the owners in proportion to the amount of such areas lying within their respective parcels"; (b) "the cost of paving and grading the area . . . and *the cost of constructing retaining walls and of curbing and fencing shall be borne by the owners,"* subject to specified leases "in proportion to the frontage on Ventura boulevard of their respective parcels . . . ; provided further that *the portion of such cost . . . chargeable to Davis* (lessor of appellant) . . . *shall be borne by Venlaur Corporation as lessee."* By paragraph 3 of the parking agreement the parties (except Davis and Dedeyne, owners of portions of Lots 11, 12, 15, and 16) appointed Roinc, a California corporation, "to contract for the paving of the areas" defined in the writing.

Following the execution of the parking agreement appellant's attorney, evidently intending to avoid the growth of a suspicion in the minds of respondents that they had been released from their September promise by appellant's new covenant in the parking agreement, requested them to renew their pledge to relieve appellant of the obligation contained in the last above italicized passage. To this end such attorney prepared the following letter to appellant and caused respondents to sign it.

". . . April 25, 1941.
. . . "In connection with that certain parking agreement dated April 28, 1941, executed by you, it is understood and agreed that the cost of said work, as per previous agreement, shall be paid by the undersigned.

"You now have in your files a letter from the R. A. Rowan & Co. stating that the sum of Five Hundred ($500) Dollars is being held by them to pay for this work."

When the work had been finished in January, 1943, as provided by the parking agreement, appellant was billed for the sum of $2,168.41 as its proportionate share, and two years later it requested respondents to pay that sum. The latter denied liability, claiming their obligation to be limited to the cost of paving merely the street over Lot 16. Roinc filed the instant action against appellant and recovered the amount of its claim, but appellant was denied relief on its cross-complaint against respondents for any sum in excess of the $500

as promised by their September letter. Of this part of the judgment Venlaur demands a reversal.

### RESPONDENTS' OBLIGATION NOT ENLARGED BY THE 1941 WRITINGS

Under the doctrine that a judgment will not be reversed where there is substantial evidence to support it, appellant enters these portals with slender support. The documents in evidence indicate no intention of respondents to pay more than the "cost of paving." If appellant's officers had entertained any notion that respondents' obligation covered the cost of appellant's share of merely the paving of all the streets to be constructed on the commercial area they would have sounded an alarm on receipt of the Rowan letter. While the area to be paved over Lot 16 is 8,750 square feet, the total area contemplated at that time to be paved was in excess of 111,000 square feet. The streets comprising such area were under discussion by all the parties at the time of and prior to the Rowan letter. The scheme was practically consummated by the execution of the parking agreement. If respondents had believed that they were obligated to deposit the "approximate cost" of paving 111,000 square feet of streets, to say nothing of the construction of the fencing, curbing and retaining walls, would they have left a mere $500 with Rowan as "the approximate cost" thereof? And would appellant's officers have sat complacently by without indicating its opinion that $500 was but a fraction of the readily estimated amount to be paid by respondents pursuant to their September letter?

The parking agreement required the owners to pay the cost of "paving and grading" and "the *cost of constructing retaining walls and of curbing and fencing*" in proportion to their respective frontages on Ventura Boulevard, but pursuant to its lease appellant assumed the charges to be made against the Davis lots. Respondents' letter of April 25, 1941, to Venlaur did not extend their obligation. Their statement was that "the cost of said work *as per previous agreement*" shall be paid by respondents, and again they reminded appellant that it had the Rowan letter to the effect that $500 was on deposit "to pay for this work." With the parking agreement executed, the area theretofore "contemplated" for paving, grading, fencing and curbing became an actuality. With such a definite program and its several obligations it is inconceivable that respondents could have intended by their letter to

assume Venlaur's share of the construction to be done under that agreement. If appellant had in mind that respondents were to pay its share of the cost of such work why did not its officers then protest that not only was the deposit inadequate but also that respondents were laboring under an illusion in thinking that the share of their obligation as defined in their September letter was so slight that $500 would approximate it?

### THE BRIDGES' LETTER: PRICE'S ANSWER

■ But still another document was attached to appellant's cross-complaint and received in evidence. It is the letter of appellant's attorney Bridges written to respondents three days after their April letter. By that document Bridges apparently attempted to commit respondents to an acquiescence that they had by their letter of April 25, assumed Venlaur's obligation to pay for "the original cost of paving and grading and cost of constructing retaining walls and of curbing and fencing" by saying that those items "are to be paid by you pursuant to the agreement contained in the letter from the Rowan Company of October 8, 1940." He did not mention respondents' own letter of September. He then concluded by saying: "Thus it is our understanding that all of the obligations of Venlaur Corporation set forth in paragraph V . . . of said agreement, are to be paid and performed by you." The court found upon substantial evidence that this letter was never received, read by or communicated to either respondent prior to February 9, 1945.

However, respondents did make reply to Bridges under date of March 1, 1945. Mr. Price was the author of that writing and his explanation of its phraseology removed the apparent admission of an enlargement of their debt. He wrote: "Neither of the undersigned, the brokers in the deal, ever agreed to pay for any other work than the original cost of paving and grading the street and *cost of construction of retaining walls and curbing and fencing* of that part of the land leased to Venlaur that was to be used for a street and/or easement." After reminding Bridges of the statement of the paving company which had done the work to the effect that the cost of paving the street with an area of about 8,000 square feet amounted to $400, the letter concluded with the admonition: "If you pay the Rowan Company any sum over $500 we do not propose to reimburse you for any such sum." Mr. Price testified that his inclusion of the "cost of construction

of retaining walls and curbing and fencing" was his mistake and written without having before him the September letter. But, notwithstanding his "mistake" the language of their reply to Bridges clearly discloses that respondents still adhered to the September letter as the expression of their agreement with appellant with reference to their claim that the paving of the "proposed street easement" would not exceed $500. Upon the issue of the ambiguity of respondents' September letter the trial court determined from the writings that there was no uncertainty in its terms and that their obligation was limited to "the cost of paving the private street," stipulated to have been $500.

One more significant fact indicates the slow development of appellant's intention to modify its original agreement with respondents to collect from them the cost of the mere paving of the strip over Lot 16. While Roinc had demanded payment by appellant of its debt in January, 1943, for the construction work done in the commercial center, the latter did not request payment from respondents of any sum for two years thereafter. In view of that fact and of the incontestably clear statement of respondents in their letter of September 27, 1940, the trial court's finding that respondents' agreement was that contained in such letter is supported by substantial evidence.

### No Error In Rejecting Parol Proof

Appellant contends that the several letters of respondents above discussed are ambiguous and therefore testimony should have been received to show the intention of the parties. Its offer of such testimony was properly rejected. It was established that the letters were not ambiguous but that the one of September, 1940, states a definite promise, not altered by the others. ■ It is conceded to be the law that when an ambiguous contract is the basis of an action testimony may be introduced to explain it, whereby to ascertain the intention of the parties. ■ But it is also elemental that when a trial court finds from the very writing relied upon for recovery that there is no ambiguity, then nothing on that score remains for the jury's determination. ■ When the questioned writing is certain in fixing the obligations of the obligor, parol evidence is not admissible to vary its terms.

In its effort to maintain its contention appellant has cited *California Emp. Stab. Com.* v. *Walters,* 64 Cal.App.2d 554 [149 P.2d 17]; *Derrer* v. *Keeler Gold Mines,* 63 Cal.App.2d

606, 610 [147 P.2d 102] ; *Eldora Oil Co.* v. *Gibson,* 201 Cal. 231, 256 [256 P. 550] ; *Moore* v. *Borgfeldt,* 96 Cal.App. 306 [273 P. 1114] ; *Gottlieb* v. *Tait's, Inc.,* 97 Cal.App. 235 [275 P. 446], to establish what its rights would have been had the court found the writing ambiguous. They are not illuminating. In each of them there was either an ambiguity or a doubt as to the exact sense in which a word or words had been used. Hence the court properly admitted testimony of the circumstances to enable it intelligently to interpret the agreement under consideration; or it involved a parol agreement which had been performed in the place of a written contract, or the circumstances were such as to require parol proof of the intention of the parties. In the instant case the trial court determined that there was neither ambiguity in the September letter in the light of the other writing nor a lack of clarity in the meaning of the terms used in that letter.

Appellant says that it relies "particularly upon the April letter." But the contract was made by the September letter, as evidently found by the court to have been a special inducement to appellant to execute the Davis lease. The April letter was clearly a reassurance that respondents would do as they had previously agreed concerning the 50-foot strip notwithstanding that appellant had by the parking agreement promised to do more. Because in September, 1940, the payment of the cost of paving the 50-foot strip was the total burden assumed by respondents on behalf of appellant it does not follow as a natural or necessary sequitur that in April their generosity or their zeal to effect the consummation of the commercial center had gained such proportions as to oblige them to consent to pay all obligations assumed by appellant. If Price participated in the negotiations for the parking agreement he did so to earn his brokerage, not to pay the debts incurred or assumed by appellant. That agreement did not "change" Venlaur's obligation from that assumed in the Davis lease but imposed additional burdens upon appellant which dealt with a number of individual lessors who were under no obligation to Davis. Appellant proceeds upon the assumption that respondents signed the April letter because they had concluded to enlarge their obligation on behalf of Venlaur. There is no basis for such assumption. It is not a reasonable interpretation of the April letter to say that respondents signed it as a guarantee that they would in due season pay "Venlaur's proportionate cost of the work to be performed under the parking agreement." While by the

parking agreement appellant assumed the obligation to pay the share of the expenses of the improvements specified · in that instrument chargeable to its own lessor (Davis), yet from the writings and the testimony the court found that respondents did not assume appellant's new burden.

### Parol to Show Sense of Agreement

■ Appellant contends that its offers of Attorney Bridges' testimony should have been received to "show the sense in which the parties understood" the language of the September letter; that it would prove that such witness's declarations at the conferences of the parties would show that respondents understood they were assuming appellant's obligation under the parking agreement and that Bridges then stated that respondents would give appellant a letter as evidence of such understanding. Such offer was properly excluded. It did not disclose a consideration for the asserted offer of Mr. Price; the contract that would have been made thereby would not have been enforcible by reason of the two-year statute of limitations (Code Civ. Proc., § 339) and would have violated the statute of frauds (Civ. Code. § 1624, subd. 2). Special pleas of respondents supported objections based upon those grounds. Appellant cites in support of such contention *Body-Steffner Co. v. Flotill Products,* 63 Cal.App.2d 555, 561 [147 P.2d 84]. ■ No principle is expounded by that decision other than that contained in section 1861 of the Code of Civil Procedure. The meaning of that decision as well as of the code section is that the language of a written contract may be examined and its sense ascertained by evidence other than the writing itself "when doubt arises" upon the true meaning of the instrument. The trial court did not entertain a doubt as to the purposes of any word in the September letter. It is a matter of common occurrence that terms in common use are used in writings which have a local or technical significance and require evidence explanatory thereof to derive the proper construction, as provided by the last cited code section. Such was the situation in the Steffner case. ■ Of course where a phrase indicates that it is used "to distinguish this type of contract" from others, parol is admitted to show that it had a "special, technical, definite and peculiar meaning" to the contracting parties.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.