LILLIE, J.
 

 In April 1931, plaintiff executed a contract granting MGM the right to create and write an original story using the character, Tarzan, and to produce a photoplay based thereon. Thereafter, it wrote an original story and produced a photoplay known as the 1932 version of “Tarzan, the Ape Man” (hereinafter referred to as the first photoplay). Under Paragraph 14 of the contract, MGM had the “right to reissue said first photoplay, and likewise to remake said first photo-play and also to produce additional photoplays based on said story. Metro agrees, however, that all remakes of the first photoplay produced by it hereunder, as well as all other photo-plays produced by it hereunder subsequent to the making of said first photoplay, shall be based substantially upon the same story as that used by Metro in connection with said first photoplay and that in such subsequent remake and/or additional photoplay there will be no material changes or material departures from the story used in connection with said first photoplay.” In 1959 MGM produced a remake of the first photoplay under the same title, “Tarzan, the Ape Man” (hereinafter referred to as the second photoplay).
 

 Thereafter plaintiff filed suit against MGM for breach of contract alleging mainly a violation of Paragraph 14, in that the remake was not “based substantially upon the same story” as the first photoplay, and that it contained “material changes” and “material departures.” A demurrer on the ground the complaint failed to state facts sufficient to constitute a cause of action, in that plaintiff did not attach copies of the photoplays thereto, was sustained with leave to amend. Plaintiff then filed its first amended complaint incorporating the two photoplays—the scripts were attached thereto as “A”
 
 *444
 
 and “B,” and the two films were pleaded by reference. A general demurrer thereto was sustained without leave to amend; at the hearing thereon the lower court viewed the photoplays, determined as a matter of law they were not dissimilar within the meaning of the language of the contract, and concluded the pleading failed to state facts sufficient to constitute a cause of action. Thereupon, plaintiff moved the lower court to reconsider its ruling; the motion was granted. Upon a second hearing the demurrer was again sustained, but with leave to file a second amended complaint upon plaintiff’s representation that it would contain all ultimate facts which plaintiff was able to plead. A general demurrer to the second amended complaint was interposed. Upon considering the contract and finding it to be clear and unambiguous, and after viewing the two productions incorporated in the second amended complaint and finding that they are “based substantially upon the same story” and that the second photoplay contains no “material changes or material departures,” the lower court concluded that there is a substantial similarity between the two productions as a matter of law within the meaning of the contract, and sustained the demurrer without leave to amend. It is from the judgment dismissing the second amended complaint on the order sustaining the demurrer plaintiff appeals.
 

 Inasmuch as plaintiff was granted the right to file a second amended complaint upon its representation “that said Second Amended Complaint, would contain all ultimate facts which plaintiff was able to plead” (Judgment, p. 2), and plaintiff immediately thereafter filed the same, and inasmuch as we may, therefore, assume plaintiff alleged all ultimate facts it was able to plead and thus stated its case as strongly as possible, the issue is not whether the lower court abused its discretion in denying leave to amend, but whether the second amended complaint alleges facts sufficient to constitute a cause of action. On this main issue appellant contends that section 426, subdivision 3, Code of Civil Procedure, does not here apply; that the lower court enlarged the contractual rights of the parties by recognizing the right of MGM to “update and modernize”; that it has been denied a trial on whether the second photoplay is based substantially upon the same story as the first and whether it contains material changes or material departures; and that as a matter of law the two photoplays are not substantially similar.
 

 
 *445
 
 Relative to its first point, appellant argues that this is not a plagiarism or related contract action and the complaint is not a demand “for relief on account of the alleged infringement of plaintiff’s rights in and to a literary . . . production,” thus, section 426, subdivision 3, is not applicable, and the lower court could not compel it to make the photoplays part of its complaint and had no power to view them on demurrer.
 

 Section 426, subdivision 3, Code of Civil Procedure, does apply to contract actions; the within breach of contract action is in fact based upon an exclusive literary right which plaintiff alleged has been appropriated or infringed; and the issue, the similarity of the two photoplays, is substantially the same as that involved in plagiarism and infringement cases. Section 426, subdivision 3 provides in pertinent part: “If the demand be for relief on account of the alleged infringement of the plaintiff’s rights in and to a literary, artistic or intellectual production, there must be attached to the complaint a copy of the production as to which the infringement is claimed and a copy of the alleged infringing production.”
 

 This section applies to contract actions, and the courts so hold. In
 
 Sutton
 
 v.
 
 Walt Disney Productions,
 
 118 Cal.App.2d 598 [258 P.2d 519], which involved no matter of plagiarism or infringement of copyright, but was strictly an action for damages for breach of contract by the unauthorized use of plaintiff’s book in producing a motion picture, count I of the amended complaint alleged a breach of an express contract and count II alleged substantially the same facts in the common counts as in an implied-in-fact contract. In affirming the lower court’s order sustaining the demurrer, the court said: “Section 426, Code of Civil Procedure, requiring plaintiff ’s story to be attached to the complaint in infringement actions, applies to actions on contract as well as to suits grounded in tort for plagiarism.
 
 (Weitzenkorn
 
 v.
 
 Lesser,
 
 40 Cal.2d 778, 782 [256 P.2d 947].)” (p. 602); and further held: “Unless appellant can demonstrate a substantial similarity between her ideas as embodied in her book and the motion picture ‘Beaver Valley,’ she cannot state a cause of action in contract.
 
 (Weitzenkorn
 
 v.
 
 Lesser, supra; Kurlan
 
 v.
 
 Columbia Broadcasting System, Inc.,
 
 40 Cal.2d 799, 809 [256 P.2d 962].)” (P. 603.)
 

 Moreover, plaintiff pleaded a breach of contract, “in that defendants have
 
 appropriated
 
 to themselves the rights and
 
 *446
 
 benefits of the second photoplay without compensation to plaintiff” (emphasis added), which second photoplay it alleged to be an “unauthorized sequel.” (Par. X, Second Amended Complaint.) This appears to be the very kind of action contemplated by section 426, subdivision 3.
 

 Also, plaintiff, by its allegations—that the second photoplay is not based substantially upon the same story used in connection with the first photoplay, and that the second contained material changes and departures—raised the issue of similarity, the same issue involved in infringement and plagiarism cases; and section 426, subdivision 3 applies “. . . not only to a tort action for plagiarism but also to causes of action for infringement of related contract rights.”
 
 (Weitzenkorn
 
 v.
 
 Lesser,
 
 40 Cal.2d 778, 785 [256 P.2d 947];
 
 Kurlan
 
 v.
 
 Columbia Broadcasting System, Inc.,
 
 40 Cal.2d 799, 806 [256 P.2d 962].)
 

 Appellant is hardly in a position to complain that the lower court should not have required it to make the photo-plays part of its complaint; if it was error to make such a ruling (by sustaining the demurrer to the original complaint) appellant has long since waived the same.
 
 (Gale
 
 v.
 
 Tuolumne County Water Co.,
 
 14 Cal. 25.) The first demurrer, interposed on the ground that the original complaint failed to state facts sufficient to constitute a cause of action, “in that said complaint fails to contain the necessary allegations pursuant to California Code of Civil Procedure, section 426, subdivision 3” (Demurrer to the Complaint; Memorandum Decision, p. 2), was sustained; to this order plaintiff not only failed to object or then complain that section 426, subdivision 3 did not apply, but acquiesced in the same by filing its first amended complaint to comply with the order, attaching thereto the scripts and incorporating therein the two films by reference. After the ruling on the first demurrer appellant twice amended its complaint; in doing so it in effect admitted the first demurrer was good and that the original complaint, which did not include the two photoplays in accordance with section 426, subdivision 3, was insufficient to state a cause of action.
 
 (Sheehy
 
 v.
 
 Roman Catholic Archbishop,
 
 49 Cal.App.2d 537 [122P.2d 60].)
 

 Appellant contends that there is nothing in the contract giving MGM the right to update, modernize and adapt the story to current times and conditions, and any effort to do so was inconsistent with the express prohibition against “mate
 
 *447
 
 rial changes” or “material departures”; and that the language of Paragraph 14—“based substantially upon the same story” and “material changes or material departures”— renders the contract so ambiguous as to require evidence of the intent of the parties at the time the contract was executed and the custom and practice in the industry. The lower court concluded in connection with MGM’s “remake” rights under the contract that “inherent [therein] . . . there must be and is the right to update and modernize clothes, customs, dialogue, mood and tempo; to use current, modern techniques of color and camera; to adapt the story to the way people live and look at life in this and future generations, rather than in the generation in which the original photoplay was made. ’
 
 ’
 
 (Memorandum Decision, p. 4.)
 

 Paragraph 14 of the contract gives MGM, subject to certain limitations contained therein, the following separate and distinct rights—to
 
 make
 
 a photoplay based on the original story, to
 
 reissue
 
 the first photoplay, to
 
 remake
 
 the first photoplay, and to
 
 produce additional
 
 photoplays based on the original story—-“for the full duration of the copyright period of any photoplay or photoplays produced by it hereunder, including any renewals thereof, and to the full extent thereof, and forever, as long as any rights in such story and/or photoplay and/or ‘remakes’ and/or further photoplays are recognized in law or in equity.” Therefore, under the contract MGM is given the right of unlimited remakes of the first photoplay for virtually an unlimited period of time in the future. Thus, if there is not inherent therein the right to update, modernize and adapt the story to life in today’s generation and employ current methods and techniques, the right of unlimited remakes of the first photoplay (as distinguished from the right to rephotograph the same) to be exercised for the time expressly provided in the contract, is without value. That the right to update and modernize was in fact contemplated by the parties is reflected in another portion of the contract, giving MGM “all rights, both present and future and whether or not the same be now known or recognized, which may be necessary to produce, exhibit and/or transmit photoplays based on said story ...” (Par. 5).
 

 Further, the use of the word “material” in describing the changes or departures prohibited and the word “substantially” in permitting remakes—(Par. 14), clearly allows changes and departures from the original story; and under
 
 *448
 
 the terms of the contract these permitted variations could reasonably relate to nothing other than those resulting from updating, modernizing and adapting the original story natural and inherent in, and concomitant with, the right to remake the first photoplay and the right to produce additional photoplays based on the original story. And such changes are not material or substantial in nature as long as the locus of the play, the order of sequence, the development of the plot, and the theme, thought and main action of the story are preserved. Our attention has been called to
 
 Manners
 
 v.
 
 Famous PlayersLashy
 
 Corp. (D.C.N.Y.) 262 P. 811, wherein language far more restrictive than “material changes or material departures” was interpreted. The contract provided: “No alterations, eliminations or additions can be made in the play without the approval of the author”; and in discussing defendant’s right to produce a motion picture based on the story “Peg O’ My Heart” under this language, the court said at page 815: “If these substantial features (‘locus of the play or the order of sequence or development of the plot’) are retained, then such pictures as may be necessary to explain the action of the play, and as may be necessary in substitution for dialogue, may be entirely proper, and not in violation of the (contract). ...” Also on the issue of similarity between plaintiff’s story and defendant’s photoplay in
 
 Curwood
 
 v.
 
 Affiliated Distributors, Inc.
 
 (D.C.N.Y.) 283 P. 219, the court held that as long as appropriate expression to the theme, thought and main action of the original story is retained “scenery, action, and characters may be added to the original story, and even supplant subordinate portions thereof, . . .” (P. 222.)
 

 Appellant claims it is entitled to show the meaning of the words “material changes or material departures” used in Paragraph 14 by parol evidence at a trial; but we agree with the conclusion of the lower court that the writing on its face appears to be “clear and unambiguous” (Memorandum Decision, pp. 4, 5.), thus not subject to interpretation by parol evidence to mean something other than that expressly provided therein. Whether a contract is ambiguous is a question of law to be determined by the court from the contract itself
 
 (Horning
 
 v.
 
 Ladd,
 
 157 Cal.App.2d 806 [321 P.2d 795]); and it is “. . . elemental that when a trial court finds from the very writing relied upon for recovery that there is no ambiguity, then nothing on that score remains for the
 
 *449
 
 jury’s determination.”
 
 (Roinc
 
 v.
 
 Venlaur Corp.,
 
 84 Cal.App.2d 552, 559 [191 P.2d 60].) In other words, the lower court having found there to he no ambiguity in the contract, there is no room for an interpretation by way of proof of intent of the parties or custom or usage.
 
 (Albaugh
 
 v.
 
 Moss Constr. Co.,
 
 125 Cal.App.2d 126 [269 P.2d 936].) It is the rule that usage and custom will not be employed to vary the clear terms of an agreement or change their meaning when there is a specific contractual provision governing them.
 
 (Scheerer & Co., Inc.
 
 v.
 
 Deming,
 
 154 Cal. 138 [97 P. 155];
 
 A.R.G. Bus Co.
 
 v.
 
 White Auto Co.,
 
 52 Cal.App. 142 [198 P.2d 829];
 
 Lowell
 
 v.
 
 Harris,
 
 24 Cal.App.2d 70 [74 P.2d 551].) Herein the contract specifically defines the right of MGM to remake the first photoplay and the time in which it may be exercised; it also expressly permits changes and departures not “material” and does not restrict remakes to the original story as long as they are based “substantially” upon it. Thus, in view of the changes that are necessarily contemplated in the right to remake the first photoplay, it seems clearly intended that those permitted changes and departures would necessarily relate to those which would naturally result from updating, modernizing and adapting the original story to current times; and external evidence contrary to this fair and clear meaning of the terms—“based substantially upon the same story” and “material changes or material departures from the story”—is not admissible.
 
 (Murphy
 
 v.
 
 Warner Bros. Pictures, Inc.
 
 (9 Cir. 1940) 112 F.2d 746;
 
 Home Insurance Co.
 
 v.
 
 Exchange Lemon Products Co.
 
 (S.D.Cal. 1954) 126 F.Supp. 856.)
 

 The second amended complaint alleges five instances of violation of the written agreement. (Par. VIII.) Subparagraph (1) alleges the second photoplay is not based substantially upon the same story as that used in the first photo-play. No claimed dissimilarity is alleged nor are any pertinent facts set forth. Subparagraph (2) avers that the second photoplay contained material changes and material departures from the story used in the first photoplay including changes in script, continuity, character, personalities, plot, structure, motivation, events, time, sequence, credit, copyright and incidents, and eliminations from and additions to such story. It is obvious that this allegation refers to the updating, modernization and adaptations permitted under Paragraph 14. Subparagraph (3) alleges that the second photoplay includes
 
 *450
 
 adaptations, arrangements, changes, transpositions, translations, additions to and subtractions from the story of the first photoplay in violation of Paragraph 6 of the contract. Prom this general allegation and conclusion no breach of Paragraph 6, which relates to the first photoplay, not to a remake, is apparent. Subparagraph (4) alleges a breach of Paragraph 8 in that, without written consent of Burroughs, the second photoplay depicts Parker as being killed prior to the end of the story. We cannot ascertain from this pleading how or in what manner the death of Parker a moment or two earlier than in the original story breaches Paragraph 8, for there is no allegation relating to whether Burroughs “so depicted, portrayed or described” such character in any story heretofore written by him. Subparagraph (5) alleges that the second photoplay contains many changes and departures from the first photoplay which are material. No factual allegations support this general conclusion.
 

 Relative to appellant’s contention that the lower court erred in holding as a matter of law that the two photoplays are substantially similar, appellant cites numerous changes in script, credit and copyright, continuity, characters, plot and structure, story motivations, events and incidents, the materiality of which, it claims, can only be demonstrated upon a trial.
 

 Without question, the lower court possesses the power to view the two photoplays under section 426, subdivision 3, Code of Civil Procedure, and has the right thereunder on demurrer to determine as a matter of law the issue of substantial similarity, without a trial.
 
 (Palmer
 
 v.
 
 M.G.M. Pictures,
 
 119 Cal.App.2d 456 [259 P.2d 740];
 
 Weitzenkorn
 
 v.
 
 Lesser,
 
 40 Cal.2d 778 [256 P.2d 947].) In the case at bar the issue of substantial similarity consists of the questions whether the second photoplay is based substantially upon the same story as the first, and whether there existed in the second, material changes or material departures. This issue was framed by plaintiff’s own specific allegations contained in its second amended complaint (Par. VIII). The general demurrer thereto directly placed on the lower court the duty to consider all facts disclosed on the face of the pleading. And constituting part of these facts are the two photoplays which plaintiff had properly incorporated in the complaint. The controlling rule is set out in
 
 Weitzenkorn
 
 v.
 
 Lesser, supra,
 
 at
 
 page 791:
 
 “Having both productions before it in accord
 
 *451
 
 anee with section 426, subdivision 3, the court may determine whether there is substantial similarity between them. If, as a matter of law, there is no such similarity, no question of fact is in issue and the demurrers to each count of the complaint were properly sustained. But if, from a comparison of the two productions, such similarity reasonably might be found, that issue, and also the question as to copying, should have been submitted to the jury for determination.” (Therein the contentions were reversed, plaintiff claiming a similarity existed.) This rule was followed in
 
 Palmer
 
 v.
 
 M.G.M. Pictures,
 
 119 Cal.App.2d 456 [259 P.2d 740], wherein the court rejected the contention appellant here makes, that the action of the lower court in determining the issue of similarity on demurrer deprived him of a trial on the issue, by holding that the only issue raised by the demurrer was the legal sufficiency of the complaint to state a cause of action for plagiarism. The court said: “That is a question of law for the court, not of fact for the jury.” (P. 460.) And continued: “In the present case, . . . the sole issue then remaining was that of similarity, a matter to be determined by direct comparison of the two productions. As said in
 
 Shipman
 
 v.
 
 R.K.O. Radio Pictures, Inc.,
 
 20 F.Supp. 249, ‘the works themselves supersede and control any allegations and conclusions of fact about them or descriptions of them which may be contained in the complaint.’ ” In
 
 Kurlan
 
 v.
 
 Columbia Broadcasting System, Inc.,
 
 40 Cal.2d 799 [256 P.2d 962], following
 
 Weitzenhorn
 
 v.
 
 Lesser, supra,
 
 the court said of the lower court’s determination of similarity on demurrer under section 426, subd. 3: “This in no way deprives a plaintiff of his right to a jury trial. If, from a comparison of the productions, a question of fact is shown to exist, the cause should be submitted to the jurv.” (P. 807.)
 

 While the issue of similarity is actually a matter of law for the lower court, it is nevertheless factual in nature to the extent that the court must determine the question from the facts appearing on the face of the complaint. And it is clear that in the determination of the issue enters the element of what a reasonable man might conclude from these facts.
 
 (Weitzenhorn
 
 v.
 
 Lesser,
 
 40 Cal.2d 778 [256 P.2d 947];
 
 Kurlan
 
 v.
 
 Columbia Broadcasting System, Inc.,
 
 40 Cal.2d 799 [256 P.2d 962];
 
 Palmer
 
 v.
 
 M.G.M. Pictures,
 
 119 Cal.App.2d 456 [259 P.2d 740].) While
 
 Stanley
 
 v.
 
 Columbia Broadcasting System, Inc.,
 
 35 Cal.2d 653 [221 P.2d 73, 23 A.L.R.2d 216],
 
 *452
 
 an infringement action, was decided on the merits, the issue of similarity between two productions was involved, and the court recognized the test to be “that impression received by the average reasonable man upon a comparative reading of the . . . works.” (P. 661.)
 

 Finding that the contract is clear and unambiguous in its terms, and, after viewing and comparing the two photo-plays, finding that the second is based substantially upon the same story as the first and that there are no material changes or material departures in the second photoplay, we conclude, as did the lower court, that there is substantial similarity between the two productions as a matter of law within the meaning of the contract; and the case was properly determined upon demurrer.
 

 The judgment is affirmed.
 

 Wood, P. J., and Fourt, J., concurred.