[No. B130852. Second Dist., Div. Five. Mar. 17, 2000.]

ML DIRECT, INC., et al., Plaintiffs and Appellants, v.
TIG SPECIALTY INSURANCE CO., Defendant and Respondent.

## COUNSEL

Gansinger & Hinshaw, David C. Hinshaw and Gary Metro for Plaintiffs and Appellants.

Arter & Hadden, Paul D. Hesse and Erik L. Jackson for Defendant and Respondent.

## OPINION

**GODOY PEREZ, J.**—Plaintiffs ML Direct, Inc., and Nancy G. Shalek appeal from the summary judgment entered in favor of defendant TIG Specialty Insurance Co. in this insurance coverage declaratory relief action. For the reasons set forth below, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Plaintiff and appellant ML Direct, Inc. (MLD), bought a directors and officers (D&O) policy (the policy) from defendant and respondent TIG Specialty Insurance Co. (TIG) for the one-year period starting March 11, 1997. The insureds under the policy were the directors and officers of MLD. The policy applied to claims made and reported during the policy period for various wrongful acts that the insureds might commit. Plaintiff and appellant Nancy G. Shalek was at all relevant times an officer and director of MLD and was therefore an insured under the policy.[1]

The policy excluded from coverage claims based on or connected to preexisting litigation, administrative proceedings or other hearings. On June 27, 1997, a class action lawsuit was filed against appellants and others in a New York federal district court—*Petit v. Sterling Foster & Co.,* CV 973775 (hereafter the Petit action). When TIG denied coverage for the Petit action under the prior litigation exclusion, appellants filed a declaratory relief action seeking to determine that their claim was covered. TIG sought and was granted summary judgment pursuant to the prior litigation exclusion and this timely appeal followed.

### STANDARD OF REVIEW

██ Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c,

---

[1]We will sometimes refer to MLD and Shalek collectively as appellants.

subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Barber Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

█ A defendant moving for summary judgment meets his burden of proof of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or to a defense to the cause of action. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*; see *Union Bank Superior Court* (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].)

DISCUSSION

1. *Rules of Insurance Contract Interpretation*

█ The interpretation of an insurance policy is a question of law subject to our independent review. (*Bluehawk Continental Ins. Co.* (1996) 50 Cal.App.4th 1126, 1131 [58 Cal.Rptr.2d 147].) While insurance contracts have special features, they are still contracts subject to the ordinary rules of contract interpretation. The fundamental goal of contract interpretation is to give effect to the parties' mutual intentions, which, if possible, should be inferred solely from the written terms of the policy. If that language is clear and explicit, it governs. (*General Star Indemnity Co. v. Superior Court* (1996) 47 Cal.App.4th 1586, 1592 [55 Cal.Rptr.2d 322] (hereafter *General Star*).) Policies must be interpreted as a whole, giving force and effect to every provision where possible. (*City of Oxnard Twin City Fire Ins. Co.* (1995) 37 Cal.App.4th 1072, 1079 [44 Cal.Rptr.2d 177].)

█ When it comes to exclusions, the insurer bears the burden of proving the exclusion applies. Exclusionary language must be plain, clear, and conspicuous. Policy terms are ambiguous when more than one reasonable

construction of the language is possible. So long as coverage is available under any reasonable construction, the insurer will be held liable. (*De May Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1136-1137 [38 Cal.Rptr.2d 581].) If an exclusion is not ambiguous, however, it will prevail over the insuring clause and preclude coverage. (*Id.* at p. 1137.)

We will not adopt a strained or absurd interpretation to create an ambiguity where none exists. The policy terms must be construed in the context of the whole policy and the circumstances of the case and cannot be deemed ambiguous in the abstract. (*General Star, supra,* 47 Cal.App.4th at pp. 1592-1593.) If an ambiguity cannot be eliminated by the language and context of the policy, then we invoke the principle that ambiguities are construed against the party who caused the uncertainty—the insurer—in order to protect the insured's reasonable expectations of coverage. (*Id.* at p. 1593.)

■ A contract extends to only those things as to which it appears the parties intended to contract. Our function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted. We do not have the power to create for the parties a contract which they did not make and cannot insert language which one party now wishes were there. Words used in a certain sense in one part of a contract are deemed to have been used in the same sense elsewhere. (*Levi Strauss & Co. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1485-1486 [237 Cal.Rptr. 473].)

## 2. *The Prior Litigation Exclusion Was Unambiguous and Applicable*

■ The policy's prior litigation exclusion stated: "This insurance does not apply to any Claim made against any Insured arising out of any of the following: [¶] A. Any litigation, proceeding, or administrative act or hearing brought prior to or pending as of the Prior or Pending Litigation Date as shown in Item 8 of the Declarations, as well as any future litigation, proceeding, administrative act or hearing based upon any such pending or prior litigation, proceeding, administrative act or hearing or derived from the essential facts or circumstances underlying or alleged in any such pending or prior litigation, proceeding, administrative act or hearing. . . ." The prior or pending litigation date was identified by the policy as March 11, 1997.

On September 18, 1996, the National Association of Securities Dealers (NASD) filed a disciplinary complaint (the NASD complaint) against Sterling Foster & Co. (Sterling) and various other securities dealers based on an alleged interrelated pattern of fraudulent and deceptive securities sales

practices. Sterling allegedly engaged in a recurring pattern of improper underwritings, manipulative trading and boiler room sales practices involving shares of three companies—Advanced Voice Technologies, Inc. (Advanced Voice), Com/Tech Communication Technologies, Inc. (Com/Tech), and Embryo Development Corporation (Embryo). While MLD and Shalek were not securities dealers and were therefore not named as parties to the NASD complaint, Shalek was identified as a selling securityholder of her personal shares of Advanced Voice and Com/Tech as part of the alleged scheme.

On February 14, 1997, the federal Securities and Exchange Commission (SEC) filed an action in a New York federal district court against Sterling and other securities dealers alleging numerous federal securities law violations as part of an ongoing fraudulent stock manipulation and sales scheme (the SEC complaint). The SEC complaint alleged that Sterling and the others defrauded investors of at least $75 million in connection with the shares of six companies, including MLD, Advanced Voice, Com/Tech and Embryo. Shalek is not mentioned in the SEC complaint and appellants were not named as defendants to that action. It is undisputed that the NASD and SEC complaints allege and are based upon the same acts of misconduct.

The Petit action named as defendants Sterling, Shalek, MLD and many others, including Advanced Voice, Com/Tech and Embryo. The Petit action plaintiffs specifically alleged that their complaint was based in part on the NASD and SEC complaints and borrowed liberally from those pleadings, in effect cutting and pasting the SEC and NASD allegations into their own complaint.[2] The named plaintiffs in the Petit action represented not just themselves, but a class of those who were victimized by the alleged fraud.

The Petit action alleged that Shalek was an officer or director of MLD, Advanced Voice and Com/Tech, held a controlling interest of the shares of those entities and signed false and misleading SEC registration statements for those companies as part of the alleged scheme. The Petit action plaintiffs alleged that: Shalek promised in certain public statements not to sell her shares in the companies for a specified time after the initial public offering; Shalek entered secret agreements with certain underwriter defendants involved in the stock sales to sell her shares for a huge profit; Shalek failed to disclose these secret agreements to the SEC in connection with public offerings of the affected securities; and Shalek sold her shares to one of the underwriter defendants at a substantial profit as part of the alleged scheme.

---

[2]Appellants admitted in their summary judgment opposition separate statement that the Petit action "paraphrased" the SEC and NASD complaints.

TIG argued below, and the trial court agreed, that the policy's prior litigation exclusion applied to the Petit action because it was based on the SEC and NASD complaints, which were pending before the agreed-to prior litigation date of March 11, 1997.[3] Appellants contend the prior litigation exclusion is ambiguous and therefore unenforceable. They also contend that even if the language is not ambiguous, it still must be strictly construed against TIG. Because Shalek and MLD were not parties to the SEC and NASD complaints and were hardly mentioned in those pleadings, they were not "essential" to those actions within the meaning of the prior litigation exclusion, according to appellants. Finally, they contend that enforcing the exclusion as written leads to absurd results because it would deny coverage to corporate directors on the mere fortuity that they had been the subject of secret investigations before the policy's prior litigation date.

Few reported California decisions discuss D&O policies. None that we can find discuss the particular clause before us. The few reported decisions which do come from federal courts applying the laws of other states. *Bensalem Tp. International Surplus Lines Ins. Co.* (3d Cir. 1994) 38 F.3d 1303 (hereafter *Bensalem*) comes closest to the issues we must decide. The plaintiff township was insured under a policy which provided D&O-type coverage to public officials and employees. The policy excluded claims based on certain prior proceedings, as follows: "[T]he insurer shall not be responsible for making any payment for loss in connection with any claim made against any insured based upon, arising out of, or in consequence of or in any way involving: [¶] (1) any prior and/or pending litigation as of 2/1/89 [pre-policy period] including but not limited to matters before local, state, or federal boards, commissions, or administrative agencies, or [¶] (2) any fact, circumstance, or situation underlying or alleged in such litigation or matter." (*Id.* at p. 1305, italics omitted.)

The township was sued by a developer for federal civil rights violations and sought coverage under the policy. The defendant insurer denied coverage because the current civil rights action was based on facts alleged in previous state court actions which the developer brought to obtain injunctive relief. The township's subsequent declaratory relief action against the insurer was dismissed pursuant to the prior litigation exclusion. The Third Circuit reversed only because the language of the exclusion had been changed by the insurer and triable issues of fact remained as to whether the

---

[3]TIG sought summary judgment on an alternate ground which the trial court did not reach—the policy covered Shalek for wrongful conduct committed solely in her capacity as an officer or director of MLD, but the Petit action was based on her conduct in various other capacities. Because we affirm under the prior litigation exclusion, we need not reach this issue.

township was aware of the change. If the township was not misled by the change in the exclusionary language, then the insurer "must prevail because, in our view, the policy unambiguously excludes coverage for claims such as the one at issue here." (*Bensalem, supra,* 38 F.3d at p. 1312.)

While the precise language used differs, we see little functional difference between the exclusionary clause before us and the one at issue in *Bensalem.* Appellants, of course, reject the comparison. Pointing to its 40-word length, appellants characterize the policy's prior litigation exclusion as convoluted and incomprehensible. We disagree. Of those 40 words, more than half are devoted to a six-word phrase which is repeated four times—". . . litigation, proceeding, administrative act or hearing . . . ." The obvious purpose of this grouping of terms is to identify the kinds of prior or pending actions which bring the exclusion into play. Nine words are devoted to the phrase "Prior or Pending Litigation Date as shown in Item 8 of the Declarations." Since this date is readily ascertainable from the face of the policy, the phrase is easily collapsed into meaning the date of March 11, 1997.

We agree that this phrasing is inelegant, but we are reviewing an insurance policy, not literature. If these phrases are viewed in context, the clause can easily be understood as referring simply to a specified class of proceedings pending as of March 11, 1997, and is thus read as follows: "This insurance does not apply to any Claim made against any Insured arising out of any of the following: A. Any proceeding [from the specified group] brought prior to or pending as of March 11, 1997, as well as any future proceeding based on such pending or prior proceedings or derived from the essential facts or circumstances underlying or alleged in any such prior proceeding." The meaning of this clause seems clear enough. If a claim is made during the policy period, but the claim arises from a proceeding pending as of March 11, 1997, the claim is not covered. If a claim is made during the policy period, but arises from proceedings instituted after March 11, 1997, which are based on or properly connected to other proceedings pending before that date, then the claim is not covered. We therefore hold that the exclusion is not ambiguous.

Since the prior litigation exclusion, by its own terms, applies to litigation derived from the essential facts of previously pending proceedings, appellants also contend the exclusion is inapplicable as follows: They were not parties to the SEC and NASD complaints, where they are mentioned briefly, if at all. As a result, the allegations which related to them were not essential to the SEC and NASD pleadings. Their argument overlooks the other portion of the exclusion, which applies if the claim is based on the

prior proceedings. The Petit action expressly alleged that it was based on the SEC and NASD complaints and the factual relationship between all three pleadings is not disputed. Since the Petit action was based on the SEC and NASD complaints, the exclusion applies. As for the contention that the clause leads to absurd results because it would exclude claims based on secret police investigations, to the extent we comprehend this argument, it has no merit. The exclusion applies only to certain specified actions— litigation, proceedings, administrative acts or hearings. It cannot be read to include secret police investigations.

Finally, appellants raise two arguments for the first time in their reply brief: (1) that the exclusion is at odds with the policy's retroactivity provisions and must be disregarded; and (2) that their application required them to divulge any claims or prospective claims they knew about; TIG's summary judgment motion did not include the application and TIG thus failed to show appellants were aware of the SEC and NASD complaints. We decline to reach these issues because they were not raised until appellants filed their reply brief. (*American Drug Stores, Inc. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432].) We alternatively hold that the arguments lack merit.

The policy states that it covered claims made during the policy period for wrongful acts occurring after the specified retroactive date of June 22, 1995. Appellants appear to contend that the prior litigation exclusion is at odds with the retroactive coverage provision and that enforcing the exclusion would rob them of their bargained-for coverage. We disagree. Reading the provisions together, the policy provides coverage for claims made during the policy period for acts occurring after June 22, 1995, unless those acts were the subject of prior litigation or proceedings under the prior litigation exclusion. If the SEC and NASD complaints had been filed after March 11, 1997, the Petit action would have been a covered claim. We cannot rewrite the policy to provide greater coverage than that which was agreed to.

As for the policy application and proof whether appellants knew about the SEC and NASD complaints when they applied for the policy, appellants' argument again tries to add language that is absent from the policy's terms. Nothing in the prior litigation exclusion states that it applies only as to prior proceedings which the insureds knew about. Instead, it applies to *any* prior litigation or proceedings which bear the requisite factual relationship to a claim made during the policy period.

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondent to recover its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.