SDR CAPITAL MANAGEMENT, INC., Plaintiff,

v.

AMERICAN INTERNATIONAL SPECIALITY LINES INSURANCE COMPANY, Defendant.

No. 03–CV–2341 W(NLS).

United States District Court, S.D. California.

Feb. 26, 2004.

Robert V. Closson, Summers and Shives, San Diego, CA, for Plaintiff.

R. Gaylord Smith, Lewis Brisbois Bisgaard and Smith, San Diego, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WHELAN, District Judge.

Plaintiff SDR Capital Management ("Plaintiff"), a California corporation, seeks partial summary judgment against Defendant American International Specialty Lines Insurance Company ("Defendant"), an Alaska corporation. *See* Fed. R. Civ. Proc. 56. Defendant opposes. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1).

For the reasons expressed below, the Court **GRANTS** Plaintiff's motion for partial summary judgment.

## I. BACKGROUND

Plaintiff purchased an Errors and Omissions (E & O) insurance policy ("Policy") from Defendant. The Policy period ran from April 1, 2003 to April 1, 2004. Under the Policy's terms, any damages or defense obligations relating to (1) claims against Plaintiff or (2) Plaintiff's wrongful acts would be insured, subject to certain exceptions. On March 10, 2003 William Garland instituted an arbitration proceeding against Plaintiff regarding the investment supervisory services he received ("Garland Claim"). Although Plaintiff's Policy did not become effective until April 1, 2003, Plaintiff did not become aware of this arbitration claim until May 5, 2003. Thus, Plaintiff filed a claim with Defendant to cover the defense costs of the arbitration proceeding. Relying upon the Policy's "pending litigation" exclusion provision,[1] Defendant denied Plaintiff's claim.

On November 24, 2003 Plaintiff instituted this action for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing. On January 6, 2004 Plaintiff filed a motion for partial summary judgment, seeking declaratory relief that Defendant is obligated to pay Plaintiff's defense costs under the Policy's express terms. The sole issue presented in this motion is the parties' dispute regarding the interpretation of the Policy's pending litigation exclusion. Plaintiff claims that arbitration is not considered "litigation" and seeks declaratory relief that Defendant is obligated to pay the defense costs relating to the Garland claim.

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute about a ma-

---

1. The pending litigation exclusion provides: "In consideration of the premium charged, it is hereby understood and agreed that this policy does not apply to any claim arising out of or based on any litigation which was pending on or before April 1, 2003 and which involved an Insured under this policy. Nor shall this policy apply to any claim arising out of or based upon the same or essentially the same Wrongful Acts alleged in or giving rise to such pending or prior litigation." (Pl.'s Notice of Lodgment, Ex. A at 16).

terial fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

**B.** *CONTRACT INTERPRETATION*

Although insurance contracts have special features, they are still contracts subject to the ordinary rules of contract interpretation. *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1115, 90 Cal. Rptr.2d 647, 988 P.2d 568 (1999). Because this is a diversity action, the court must apply state law in interpreting an insurance policy. *See Stanford University Hosp. v. Federal Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir.1999); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 28 U.S.C. § 1652. Under California law, it is well settled that the interpretation of a contract is a question of law for the trial court's determination. *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 402 P.2d 839 (1965); *Heppler v. J.M Peters Co.*, 73 Cal.App.4th 1265, 1285, 87 Cal. Rptr.2d 497 (1999); *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir.1986). If a contract is "free from ambiguity, its meaning [is] a question of law to be determined by the court solely from its language." *Dale v. Preg*, 204 F.2d 434, 435 (9th Cir.1953) (citations omitted). The determination as to whether a contract is or is not ambiguous is a question of law for the court. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir.1995); *Edgar Rice Burroughs, Inc. v. Metro–Goldwyn–Mayer, Inc.*, 205 Cal.App.2d 441, 448, 23 Cal. Rptr. 14 (1962). A contract provision is considered ambiguous when the provision is susceptible to more than one reasonable interpretation. *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648, 3 Cal. Rptr.3d 228, 73 P.3d 1205 (2003); *Federal Ins. Co. v. Scarsella Bros., Inc.*, 931 F.2d 599, 603 (9th Cir.1991). However, the language in the contract must be interpreted as a whole and cannot be found to be ambiguous in the abstract. *MacKinnon*, 31 Cal.4th at 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205. The "mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity." *Palmer*, 21 Cal.4th at 1118, 90 Cal.Rptr.2d 647, 988 P.2d 568. In interpreting a particular provision, a court must give terms their "ordinary and popular sense." *Id.* at 1115, 90 Cal.Rptr.2d 647, 988 P.2d 568 (quoting *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990)).

Additionally, insurance coverage is interpreted broadly in favor of the insured, whereas exclusionary clauses are interpreted narrowly against the insurer. *MacKinnon*, 31 Cal.4th at 648, 3 Cal. Rptr.3d 228, 73 P.3d 1205. "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *Id.* (citations omitted). Accordingly, the burden rests with the insured to prove that the claim is within the scope of coverage, whereas the burden rests with the insurer to establish that the claim is "specifically excluded." *Id.*

**III.** *ANALYSIS*

**A.** *THE PLAIN MEANING OF "LITIGATION" DOES NOT INCLUDE ARBITRATION*

In resolving Plaintiff's motion for partial summary judgment, the Court must determine whether the disputed insurance contract language—more specifically, the term "pending litigation"—is ambiguous. If a contract term is ambiguous, it would create a genuine issue of material fact, thereby precluding summary judgment. *San Diego Gas & Elec. Co. v. Canadian Hunter Marketing Ltd.*, 132 F.3d 1303, 1307 (9th Cir.1997).

Defendant contends that arbitration qualifies as litigation. Accordingly, Defen-

dant argues that the insurance contract's prior litigation exclusion applies. In contrast, Plaintiff argues that: (1) "litigation" does not include arbitration; (2) the prior litigation exclusion does not apply; and (3) the insurance policy should cover his arbitration defense.

The Court agrees with Plaintiff.

Here, the Court finds that "litigation" is unambiguous for several reasons. First, the Oxford English Dictionary ("OED") defines "litigation" as "[t]he action or process of carrying on a suit in law or equity; legal proceedings; ... in process of investigation before a court of law." VIII Oxford English Dictionary 1037 (2d ed.1989). Conversely, the OED defines "arbitration" as "[t]he settlement of a dispute or question at issue by one to whom the conflicting parties agree to refer their claims in order to obtain an equitable decision." I Oxford English Dictionary 603 (2d ed.1989). Moreover, Black's Law Dictionary ("Black's") defines "litigation" as "1. The process of carrying on a lawsuit; 2. A lawsuit itself." Black's Law Dictionary 944 (7th ed.1999). Black's further defines "suit" as "[a]ny proceeding by a party or parties against another in a court of law." *Id.* at 1448. In sum, arbitration and litigation are fundamentally different in at least three respects: (1) unlike arbitration, litigation can only occur in a court of law; (2) unlike litigation, arbitration can only occur upon both parties' consent; and (3) in contrast to arbitration, litigation is always subject to appellate review. In many instances, arbitration becomes the final decision, not subject to review by a court of law. *See* Def.'s Opp. to Mot. for Partial Summ. J. at 15:1–2. Accordingly, the Court finds that litigation's "ordinary and popular sense" does not include arbitration. *Palmer,* 21 Cal.4th at 1115, 90 Cal. Rptr.2d 647, 988 P.2d 568 (quoting *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990)).

In response, Defendant relies on *ML Direct v. TIG Specialty Ins. Co.,* 79 Cal. App.4th 137, 93 Cal.Rptr.2d 846 (2000) to support its assertion that arbitration does qualify as litigation. However, *ML Direct* is distinguishable from the present case. In *ML Direct,* the relevant policy provision excluded "[a]ny litigation, proceeding, or administrative act or hearing brought prior to or pending as of the [policy's effective date]." *Id.* at 142, 93 Cal.Rptr.2d 846. Here, the Policy's exclusion provision is specifically limited to litigation. While arbitration clearly qualifies under *ML Direct's* exclusion provision, it does not qualify under the exclusion provision currently at issue. Proceedings, administrative acts, or hearings necessarily contemplate many different dispute resolution mechanisms. Had Defendant wished to exclude all forms of dispute resolution in their exclusion provision, the language should have been broader. Instead, Defendant specifically limited the exclusion provision's scope to litigation—a definition that, for the reasons described above, only covers disputes arising in a court of law.

Defendant's reliance on California Code of Civil Procedure § 391 is equally unpersuasive. That code provision defines litigation as "any civil action or proceeding, commenced, maintained or pending in any state or federal court." Cal. Civ. Pro. § 391(a). While Defendant places great emphasis on the word "proceeding," Defendant should focus on the phrase "in any state or federal court." Arbitration is not "commenced, maintained or pending" in any state or federal court. Therefore, by the section's own definition, arbitration is not considered litigation.

Defendant next cites several secondary sources and California cases which discuss the similarities between arbitration and lit-

igation for the proposition that they are the same. However, this reliance is also unpersuasive. The authority Defendant cites merely states that arbitration and litigation are similar in some respects; it does not state that arbitration and litigation are the same.

Finally, the Supreme Court has impliedly held that arbitration is not litigation. "Arbitration agreements allow parties to avoid the costs of litigation...." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). "There is no question that arbitration constitutes an *alternative* remedy to litigation." *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 395, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (emphasis added). "[T]he ADA expressly encourages the use of arbitration and other forms of alternative dispute resolution, *rather than litigation,* to resolve claims under the statute...." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 300 n. 1, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (emphasis added). "Exchange Act claims may be resolved by arbitration rather than litigation in federal court." *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 384, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). "Indeed, arbitration's advantages often would seem helpful to individuals ... who need a less expensive alternative to litigation." *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Because the Supreme Court consistently differentiates the terms arbitration and litigation, it is clear that the two are not equal. To the contrary, the two terms are like a lion and an antelope: while both dwell on the same African plain, each occupies a separate and distinct location on the food chain. Arbitration is merely an alternative to litigation; it is not itself litigation.

Because exclusionary clauses are interpreted narrowly against the insurer, the Court finds the Policy's "pending litigation" exclusion inapplicable to the present action. Accordingly, Plaintiff's partial summary judgment motion is GRANTED.

**B.** ***THE POLICY'S SELF-INSURED RETENTION PROVISION***

■ In the alternative, Defendant argues that its duty to pay Plaintiff for defense costs as not yet arisen because Plaintiff's self-insured retention has not yet been exhausted. The Court agrees. The applicable Policy provision provides:

> "The Company shall only be liable for those amounts payable hereunder in settlement or satisfaction of claims, judgments or awards and Defense Costs arising from any claim which is excess of the retention amount ... and such retention amount shall be borne by the Insured and remain uninsured."

Pl.'s Notice of Lodgment, Ex. A at 9. Here, Plaintiff has failed to exhaust the $25,000 retention amount. *See* Def.'s Decl. of Moya in Supp. of Opp'n to Mot. for Partial Summ. J. at 2. Accordingly, Defendants are only liable for defense costs exceeding $25,000.

**IV.** ***CONCLUSION AND ORDER***

In light of the foregoing, the Court **GRANTS** Plaintiff's motion for partial summary judgment. (Doc. No. 3–1.) The Court finds as a matter of law that Defendant is "liable for those amounts payable hereunder in settlement or satisfaction of claims, judgments or awards and Defense Costs" relating to the Garland Action in excess of $25,000.

**IT IS SO ORDERED.**