[No. B180743. Second Dist., Div. Seven. Feb. 21, 2006.]

OAK PARK CALABASAS CONDOMINIUM ASSOCIATION, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

558

---

Counsel

Shernoff Bidart Darras, Michael J. Bidart and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Robie & Matthai, James R. Robie and Kyle Kveton for Defendant and Respondent.

Opinion

**WOODS, J.—**

## INTRODUCTION

Oak Park Calabasas Condominium Association (Oak Park) appeals from an adverse judgment in favor of State Farm Fire and Casualty Company (State Farm) following a court trial in which the court determined that State Farm's policy of insurance with Oak Park offered no potential for coverage in the underlying action, leading the court to conclude State Farm did not breach its duties to defend or to indemnify Oak Park.[1] For the reasons hereafter stated we affirm.

## FACTUAL AND PROCEDURAL SYNOPSIS

### Underlying litigation with ECC.

In January of 1994 the Northridge earthquake occurred. Oak Park structures suffered considerable damage. As a result, Oak Park made agreements with a construction company by the name of ECC to repair the damaged structures. Following several contractual modifications, Oak Park refused to pay the remaining amounts due under the contract. ECC recorded a mechanic's lien on the Oak Park complex on June 1, 1995. In July 1995 ECC filed an action against Oak Park and the owners of the condominiums containing causes of action for breach of written contract, foreclosure of mechanic's lien, reasonable value of services rendered, failure to release retention proceeds in violation of Civil Code section 3260 and fraud.

Cross-complaints were filed in October 1995 by several condominium owners who had been sued in ECC's action. For brevity, these cross-complaints are referred to as the Reinglass cross-complaints. In the same month another owner filed a cross-complaint against Oak Park which we refer to herein as the Brenner cross-complaint. Reinglass and Brenner alleged that Oak Park had been negligent in its handling of ECC's claims and had breached a number of duties to the owners.

### Oak Park's tender of defense to State Farm.

Following service of the ECC complaint, Oak Park tendered the defense of all named defendants to State Farm, which State Farm acknowledged in its letter to Oak Park dated August 1, 1995.

---

[1] Cross-actions by a few homeowners against Oak Park were recognized by State Farm to have potential for coverage and a defense was provided. The cross-actions were resolved and are not involved in this appeal.

Shortly thereafter State Farm responded to Oak Park's tender letter by raising a number of directors' and officers' liability coverage (D & O) questions, namely, whether: the loss was due to wrongful acts solely related to management responsibilities; the loss involved criminal or fraudulent conduct; the loss involved excluded damages of bodily injury; property damage and personal and advertising injury; the loss involved Oak Park getting a profit; the homeowners were insureds; and whether the loss arose out of a contract.

State Farm's response letter indicated it would take longer to decide whether or not it would provide a defense than the time for Oak Park to respond to the lawsuit and further advised Oak Park and the owner defendants to take any action they deemed necessary to defend the litigation and if State Farm's investigation revealed it owed a duty to defend it would reimburse the costs of defense.

*State Farm's refusal to defend on the ECC complaint but acceptance of defense on the cross-complaints.*

In its denial of defense to the ECC litigation to Oak Park and its owners, State Farm explained in a letter dated November 7, 1995, that "this case is not the type of claim that would be covered through State Farm. Thus, we will not be able to assist in the defense of the action." State Farm further explained that "Our Liability coverage is only for tort liability. We do not insure for a contractual obligation of the type set forth in this lawsuit." However, State Farm did ultimately accept the defense of Oak Park and its board of directors in the Reinglass and Brenner cross-complaints under the D & O coverage.

*Judgment for ECC against Oak Park in the underlying litigation.*

In 2002, the matter was tried before a jury, but before the trial the claims against the individual condominium owners were resolved by summary judgment and the claims dismissed. The decision of the trial court was affirmed by the Court of Appeal in an unpublished opinion.[2] The dismissal of the condominium owners resolved the Brenner and Reinglass cross-complaints against Oak Park.

The judgment incorporates the jury's special verdict on each issue presented to it and indicates that ECC was entitled to judgment against Oak Park for breach of contract, for failure to release retention proceeds and fraud. Damages were awarded to ECC on the breach of contract claim for

---

[2] *ECC Const., Inc. v. Ganson* (June 29, 2000, B132155) [nonpub. opn.]. The opinion was subsequently ordered published on July 24, 2000, at 82 Cal.App.4th 572 [98 Cal.Rptr.2d 292].

$4,132,434, on the failure to release retention proceeds claim for $1,547,120, on the fraud claim for $1,170,519 and punitive damages in the sum of $268,000. The court awarded ECC attorney's fees of $268,000 and costs of $250,194.14.

The court conditionally granted Oak Park's motion for new trial on the condition that ECC consent to reduce the judgment to $7,154,544.70 to which ECC agreed and judgment was entered accordingly.

*Synopsis of trial court proceedings by Oak Park against State Farm.*

In March of 2003, Oak Park filed its complaint against State Farm. By stipulation the parties agreed that the action be tried in phases, with the first phase being a bench trial on the coverage issue. The first phase of the trial occurred on September 8, 2004, and the court took the matter under submission and issued its ruling on November 8, 2004, concluding that State Farm's policy defined "wrongful acts" to include only negligent breaches of duty—not breaches of contractual duties, thus determining the policy did not provide for any potential coverage for the ECC action and accordingly entered judgment for State Farm on November 30, 2004. Notice of entry of judgment was served on November 30, 2004.

Oak Park filed a timely notice of appeal on January 19, 2005.

## DISCUSSION

### Standard of Review

Phase one of the trial in this case was based on stipulated facts. Absent a factual dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law. Here, the trial court made a determination that no coverage existed based on its construction of the State Farm insurance policy in question. Specifically, the question here turned on the meaning of the term "wrongful acts" in the insurance policy and the trial court determined wrongful acts meant only negligent conduct, not a breach of duty imposed by the contract. Thus, the only issues presented for review are purely questions of law and the settled rule is that questions of law are subject to independent review by this court. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

*State Farm's policies of insurance with Oak Park.*

The insuring language pertinent to the issues in this appeal provide as follows:

"SECTION L—

"**BUSINESS LIABILITY** [¶] We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. This insurance applies only:

"1. To bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period;

"2. To personal injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or to you;

"3 To advertising injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must be committed in the course of advertising goods, products or services."

Also included in the policies was optional coverage entitled "**OPTION DO**." The pertinent portion of that insuring agreement provides:

"**OPTION DO**—

"**Directors and Officers Liability**

"1. We will pay those sums that the insured becomes legally obligated to pay as damages because of wrongful acts committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association. [¶] . . . [¶]

"5. When used in the provisions of this Option DO:

"a. wrongful acts means any negligent acts, errors, omissions or breach of duty directly related to the operation of the Condominium/Association."

The pertinent exclusions under **OPTION DO** are: "2. This optional coverage does not apply to: [¶] a. any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts; [¶] b. any bodily injury, property damage, personal injury or advertising injury liability; . . . [¶] . . . [¶] h. damages other than money damages."

The commercial liability umbrella policy insurance provides in relevant part:

**"1. COVERAGE:**

"This Company will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of personal injury or property damage or advertising injury, to which this policy applies, caused by an occurrence."

*Oak Park's apparent abandonment of claims under the business liability and commercial liability umbrella policy.*

In the respondent's brief of State Farm, an assertion is made that Oak Park has apparently abandoned any claim under the business liability portion of the policy being reviewed on appeal for the obvious reason that any claim by Oak Park in this instance does not constitute bodily injury, property damage, personal injury or advertising injury, as stated in "**SECTION L—BUSINESS LIABILITY**" of the policy. Oak Park has said nothing in the appellant's opening brief nor in its reply brief to lead this court to conclude otherwise. Accordingly, this issue is deemed abandoned and will not be addressed in this opinion.

Likewise, Oak Park has apparently abandoned any claim under the commercial liability umbrella policy which covers only those damages that the insured becomes obligated to pay for personal injury or property damage or advertising injury.

This opinion, as a consequence will only address the issues presented under the "**OPTION DO—Directors and Officers Liability**" portion of the policy.

*Contentions of the parties.*

Oak Park claims that the word "negligent" as used in the State Farm policy only modifies the word immediately following it, i.e., "acts."

State Farm, on the other hand maintains that the word "negligent" modifies the serial terms following it and further contends that the courts which have interpreted similar insuring clauses have consistently found that the term "negligent" modifies all of the words following it, whether those words are separated by commas or the disjunctive "or."

*No possibility for coverage exists under the **OPTION DO** provision.*

Under *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213 [169 Cal.Rptr. 278], a general liability policy obligated the insurer to pay

money damages by way of indemnification to its insured and purely economic loss is ordinarily not indemnifiable. This principle is not without limitation. The policy in question expressly defines "wrongful acts" as conduct sounding in negligence, i.e., negligent acts, errors, omissions or breach of duty. We focus our attention and analysis on these words and determine if these words cumulatively refer to coverage for torts and thus are covered under the policy as contended by Oak Park, or whether these words refer exclusively to breach of contract indemnification as contended by State Farm and thus are not covered under the policy.

■ One leading insurance treatise notes that wrongful acts coverage in director and officer liability policies "typically covers *negligent* breaches of fiduciary duty or violations of securities laws." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2005) § 7:1568.1, p. 7F-6.)

■ We observe that there are few California appellate decisions dealing with D & O policies. As a consequence, California courts often look to decisions of California federal courts and out-of-state cases in resolving coverage issues and interpreting policy provisions. (*ML Direct, Inc. v. TIG Specialty Ins. Co.* (2000) 79 Cal.App.4th 137, 144 [93 Cal.Rptr.2d 846].) In *Group Voyagers, Inc. v. Employers Insurance of Wausau* (N.D.Cal., Mar. 4, 2002, No. C01-0400 SI) 2002 U.S. Dist. LEXIS 3674, the court had occasion to consider the meaning of the phrase "negligent act, error or omission" and specifically addressed the question of whether the term "negligent" applies to all three of the subsequent nouns in the insuring agreement. The plaintiff argued that the word "negligent" only modified the word immediately following it ("act"), and not the words "errors or omissions." The plaintiff had emphasized that the comma following the word "act" indicated a separation between the phrase "negligent act" and "error or omission." The court found such construction to be unreasonable by stating: "The Court is not persuaded by this logic, because the phrase would be ungrammatical without the comma, thus the comma serves the purpose of separating elements of a list. The comma's presence, therefore, cannot fairly be construed to weigh in favor of plaintiff's interpretation of 'negligent act, error or omission.' The Court finds, therefore, that 'negligent act, error or omission' means 'negligent act, negligent error, or negligent omission.' " The court further indicated that plaintiff's strained reading of the policy would have provided coverage for every "negligent act" and every "error or omission," whether negligent or intentional. The court noted that such an interpretation would be self defeating because any intentional conduct could simply be characterized as an "error or omission" rather than an "act" thereby triggering coverage. The Ninth Circuit Court of Appeals affirmed the grant of summary judgment in favor of the insurer. (*Group Voyagers, Inc. v. Emplrs. Ins. of Wausau* (9th Cir. 2003) 66 Fed.Appx. 740.) The case involved a claim that an employer wrongfully failed to pay 401(k) and retirement benefits. In affirming the grant of summary

judgment, the Ninth Circuit noted that even a claim of potential error in drafting or interpreting a plan document does not necessarily transform a plan administrator's deliberate decision not to pay benefits into a negligent error in the administration of the plan for purposes of triggering coverage. It cited with approval *Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.* (7th Cir. 1993) 987 F.2d 415, 419.

Oak Park and State Farm engaged in exotic rules of grammar to argue their respective positions on appeal, but we see no reason to resort to such devices in resolving the matter. First it appears to this court that if Oak Park's construction of the policy were correct, any condominium association could choose to enter a reconstruction, remodeling or renovation contract with a contractor, then decide not to pay the bill, thus shifting the obligation to its insurer. No rational insurer would wish to undertake such an insuring obligation. It would be literally impossible, from an actuarial standpoint, to set appropriate premiums to guard against the risk that an association would enter into multimillion-dollar construction contracts, and then not pay for the construction work. That type of risk would be virtually impossible to underwrite.

Second this court is convinced that the concept of fortuity requires a disposition that favors State Farm. Oak Park has alleged nothing which was unanticipated from the standpoint of its position as an insured. The contract that Oak Park entered into was voluntary as was the amendment to the contract and the assignment of insurance proceeds. Oak Park simply chose not to pay all the money due and owing to ECC. Our Supreme Court in *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545] examined a restitution order requiring disgorgement under Business and Professions Code section 17203 and determined that damages covered under a liability insurance policy were not covered. The court noted that public policy would be offended if coverage were to be permitted for such conduct because "a person found to have violated the act would simply shift the loss to his insurer and, in effect, retain the proceeds of his unlawful conduct." (*Bank of the West v. Superior Court, supra*, at p. 1267.) The same result would obtain here if we decided to rule for Oak Park in this instance. Under the stipulated and additional proffered facts, it is revealed that State Farm paid Oak Park more than $4.9 million for losses under the earthquake coverage. Oak Park agreed to pay EEC with the money it received from State Farm, but following receipt of funds, Oak Park failed and refused to pay over a substantial portion of it, thereby keeping the money for itself. It appears to this court that Oak Park in essence wanted to enrich itself by forcing State Farm to pay twice for the same property loss. This court refuses to countenance such a result.

## *DISPOSITION*

The judgment is affirmed. Costs of appeal are awarded to respondent.

Perluss, P. J., and Zelon, J., concurred.

A petition for a rehearing was denied March 8, 2006, and appellant's petition for review by the Supreme Court was denied May 10, 2006, S142344. George, C. J., did not participate therein.