Filed 10/29/14  Yu v. American Safety Indemnity CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>AMERICAN SAFETY INDEMNITY COMPANY,<br><br>    Defendant and Respondent. | G048617<br><br>(Super. Ct. No. 30-2009-00255065)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Mohammed K. Ghods and William A. Stahr for Plaintiff and Appellant.

Blau & Associates, David S. Blau and Ron Nelson for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Bann-Shiang Liza Yu appeals from a summary judgment in favor of defendant and respondent American Safety Indemnity Company in an insurance bad faith action. She raises several grounds, including that none of several policy exclusions applies, and defendant failed to defend additional insureds, breached the covenant of good faith and fair dealing, and did not negate the equitable contribution cause of action. Plaintiff also claims the trial court erred by making a blanket order overruling all of her evidentiary objections.

We conclude an endorsement excluding coverage for preexisting damage barred coverage as a matter of law. In addition, plaintiff has not shown there was any evidence-based error. We affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff is the owner and developer of the Candlewood Suites Hotel. She contracted with ATMI Design Build (ATMI) to act as the general contractor to construct the hotel (Project). On November 18, 2002, ATMI entered into two subcontracts with Jose Jesus Aguilar, doing business as C&A Framing Company (C&A), one to provide materials and labor and one to perform the rough framing for the Project. In May 2003 ATMI fired C&A before it had completed all the work required by the subcontracts. After that date C&A never returned to the construction site and did not communicate with anyone connected with the Project. The Notice of Completion for the Project was recorded April 15, 2004.

In 2003 C&A filed suit against ATMI seeking approximately $180,000 for framing work it did on the Project. In November 2003 ATMI filed a cross-complaint against a variety of subcontractors, including C&A. As to C&A, ATMI alleged it failed to perform and inadequately performed its work, resulted in "damages to the work performed by other sub trades on the [P]roject."

2

In 2004 plaintiff sued ATMI and several of the subcontractors for alleged construction defects. C&A was added as a defendant in the second amended complaint filed November 2005.

On March 30, 2005 defendant issued to C&A a commercial general liability policy (Policy) for the period March 30, 2005 to March 30, 2006; the Policy actually terminated on July 15, 2005. Coverage under the Policy (Coverage A) provided:

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

[¶] . . . [¶] b. This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

"(2) The 'bodily injury' or 'property damage' occurs during the policy period."

An endorsement to the Policy stated:

"'Property damage,' . . . which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance." (Deemer Provision.)

An endorsement to the Policy, entitled PRE-EXISTING INJURY OR DAMAGE EXCLUSION (boldface omitted; Pre-existing Damage Exclusion), provided:

"This insurance does not apply to:

"1. Any 'occurrence,' incident or 'suit' whether known or unknown to any Insured:

3

"a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or

"b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy, or the retroactive date of this policy, if any, even if the 'occurrence' continues during this policy period.

"2. Any damages arising out of or relating to 'bodily injury,' 'property damage' or 'personal and advertising injury' which are known to any officer of the Named Insured, which are in the process of settlement, adjustment, or 'suit' as of the inception date of this policy, or the retroactive date of this policy, if any.

"We shall have no duty to defend any insured or Additional Insured against any loss, 'occurrence,' incident or 'suit,' or other proceeding alleging damages arising out of or related to 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this Endorsement applies.

"All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remained unchanged." (Boldface omitted.)

The Policy also contained an additional insured endorsement (Additional Insured Endorsement) as follows:

"This Endorsement shall not serve to increase our limits of insurance . . . . [¶] Name of Person or Organization: Project owners or general contractors, if other than a named insured, as well as their directors, officers and employees where required to be named as an Additional Insured in a written contract with the Named Insured entered into prior to the loss or occurrence.

"Effective Date: The latter of the effective date of this policy or the date on which 'your work' first started . . . , but in no event later than the policy expiration date or applicable earlier termination date of this policy.

"In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy:

4

"WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' but only as respects ongoing operations performed by the Name Insured for the Additional Insured on or after the effective date of this Endorsement.

"Coverage under this Endorsement applies only as respects legally enforceable written contract with the Named Insured and only for liability arising out of or relating to the Named Insured's sole negligence and only for 'bodily injury' or 'property damage' caused by an 'occurrence' under Coverage A not otherwise excluded in the policy to which this Endorsement applies.

[¶] . . . [¶] All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remained unchanged." (Boldface omitted.)

In June 2006, plaintiff filed her fourth amended complaint against ATMI and approximately 35 subcontractors, including C&A, who was sued for failing to complete framing. C&A was defended by Mt. Hawley Insurance Company (Mt. Hawley).

In December 2006 counsel for Mt. Hawley tendered the case to defendant on behalf of C&A. A month later, defendant denied the tender and included a reservation of rights. In the letter denying coverage defendant relied on, among other things, the exclusion of coverage for property damage occurring prior to the Policy period and that the alleged defects were not caused by work performed during the Policy period. Mt. Hawley paid to settle the case on behalf of C&A. As part of the settlement C&A and Mt. Hawley assigned to plaintiff any claims they might have against C&A's other insurers.

In 2009 plaintiff filed the first amended complaint in this action against defendant and other insurers, alleging causes of action for declaratory relief, breach of contract, bad faith, and equitable subrogation, contribution and indemnity. Plaintiff alleged C&A assigned to her all its rights against any insurer that had issued a policy to

5

him that "potentially afford[ed] coverage" for a failure to defend and further that Mt. Hawley assigned to her any rights it might have to indemnity, contribution and subrogation. She also alleged she is the assignee of any claims against defendant held by Himes Peters Jepson Architects, Inc. and Thomas D. Peters (collectively HPJ) as part of their settlement agreement.

Defendant filed a motion for summary judgment arguing it had no duty to defend or indemnify C&A in the ATMI action because C&A was not covered under the Policy. In the alternative defendant moved for summary adjudication of issues that there was no coverage for C&A or additional insureds and that the causes of action for bad faith and equitable contribution had no merit.

The trial court granted the summary judgment motion, finding "as a matter of law there was no potential for coverage" under the Policy. It relied on two endorsements to the Policy. The first was the Deemer Provision, which states that any property damage that commenced prior to the effective date of the Policy is "deemed to have happened prior to, and not during, the term of this insurance." The second was the Pre-existing Damage Exclusion, excluding coverage for any occurrence, incident, or suit occurring prior to or in the process of occurring at the inception date of the Policy, "even if the 'occurrence' continues during this [P]olicy." It further excluded damages known to C&A that were in the process of adjustment, settlement or an action as of the inception date of the Policy.

As to plaintiff's objections to defendant's evidence in support of the motion, the court did not rule on any of them because it did not rely on any declarations in deciding the motion.

## DISCUSSION

*1. Introduction*

Code of Civil Procedure section 437c, subdivision (c), declares "summary judgment shall be granted if all the papers submitted show that there is no triable issue as

6

to any material fact and that the moving party is entitled to a judgment as a matter of law." A defendant may bring a motion on the ground there is a complete defense to the action. (Code Civ. Proc., § 437c, subds. (*o*)(2),(p).) If it meets its burden to show a complete defense, the burden shifts to plaintiff to produce evidence showing a triable issue of material fact. (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) "[A] party '. . . must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.*, *supra*, 199 Cal.App.4th at pp. 1144-1145.) We review a summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 860.)

## 2. *Pre-existing Damage Exclusion*

The Pre-existing Damage Exclusion excludes coverage on two different grounds. First, there is no coverage for "[a]ny 'occurrence,' incident or 'suit' whether known or unknown," occurring prior to the starting date of the Policy; or occurring or allegedly occurring as of the starting date of the Policy, "even if the 'occurrence' continues during this [P]olicy period."

Second, the Pre-existing Damage Exclusion excludes damages "arising out of or relating to" "'property damage'" "in the process of settlement, adjustment, or 'suit' as of the inception date of this [P]olicy . . . ."

Relying solely on the second part of the Pre-existing Damage Exclusion plaintiff argues it does not bar coverage for several reasons. But we need not even get to the second alternative, because the first suffices to exclude coverage. It requires only a showing there was an "'occurrence,' incident or 'suit'" occurring before the start date of the Policy or in the process of occurring before the start date. There is no disputed

7

material fact the ATMI cross-complaint against C&A was filed before the Policy was issued. Plaintiff specifically acknowledges that in her brief. Thus, the condition of the Pre-existing Damage Exclusion is met.

Plaintiff disagrees, arguing defendant did not have "conclusive facts to negate coverage at the time of its denial" (boldface & underscoring omitted). She maintains that at the time it declined the tender defendant did not know the contents of the ATMI cross-complaint, basing this on the misleading assertion defendant had no copy of the cross-complaint in its claims file. But the record is specifically to the contrary.

In support of its motion for summary judgment, defendant filed the declaration of Jean D. Fisher, defendant's corporate claims counsel, in which she states she reviewed pleadings in the ATMI action on the court's Web site. She also had testified to this in two different depositions, where she stated she looked online and reviewed both the C&A complaint and the ATMI cross-complaint. And she specifically testified at her deposition she did not print the pleadings "because they're available online."

More importantly, however, whether or not defendant had a copy of or had reviewed the ATMI cross-complaint at the time it declined coverage is irrelevant. Pursuant to the Policy language, coverage was excluded as a matter of law because suit had been filed against C&A prior to the Policy's inception. (See *ML Direct, Inc. v. TIG Specialty Ins. Co*. (2000) 79 Cal.App.4th 137, 145 [in directors and officers policy, court affirmed denial of coverage based on language excluding coverage for claim arising from proceeding initiated before or pending as of date of issuance of policy].) That it was not their suit is of no moment under the language of the Pre-existing Damage exclusion.

If, as a matter of law, there is no potential for coverage, an insurer does not have a duty to defend the insured regardless of when it acquired that knowledge. "The resolution of a legal question against coverage . . . establishes in hindsight that no duty to defend ever existed and that there was never any potential for coverage. [Citation.]"

8

(*State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274, 284-285, fn. 6, citing *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 657-658.)

Thus, there is no need to address plaintiff's arguments based on the second portion of the Pre-existing Damage Exclusion. But even on the merits her claims fail.

This portion of the Pre-existing Damage Exclusion excludes coverage for damages arising from property damage "in the process of settlement, adjustment, or 'suit'" at the inception of the Policy. Plaintiff maintains the ATMI cross-complaint did not allege C&A's negligence caused property damage. Plaintiff is wrong.

The ATMI cross-complaint alleged C&A did not timely perform or perform in accordance with the standard of care and damaged other sub trades. It further pleaded C&A's negligence caused damage to the work performed by the other subcontractors. This is a sufficient allegation of property damage.

Additional evidence supporting defendant's denial of coverage was C&A's application for insurance from defendant showing its claim against ATMI, including the Policy Loss Run[1] supplied by RLI/Mt. Hawley, C&A's prior carrier. It shows a claim by Candlewood Suites Hotel with the claim identified as "insureds framing work allegedly causing damage to Hotel" (capitalization omitted) and a claimed date of loss of September 2003.

We give no weight to plaintiff's attempt to create a triable issue of material fact by arguing there is a question as to whether the Pre-existing Damage Exclusion was part of the Policy. Plaintiff points to defendant's letter denying coverage where the endorsement is referred to by a different number than the one in the record before us.[2]

---

[1] "'Loss runs' are reports provided by [an] insurance company that document the claim activity on each of [an insured's] policies."(Loss Runs (2014) <http://www.moodyinsurance.com/arcsi/loss_runs.shtml> [as of Oct. 27, 2014].)

[2] The letter denying coverage refers to Endorsement No. 98 08 08 99. The Pre-existing Injury or Damage Exclusion on which we rely is contained in Endorsement No. 98 08 02 05.

9

She claims that endorsement has never been produced and there is a question of its actual contents.

But the language of the endorsement excluding preexisting injury quoted in the letter denying coverage is identical to the language of the Pre-existing Damage Exclusion included in the record and on which we rely. The number of the endorsement is completely irrelevant. The substance is what is important, and there is no question as to that.

This Pre-existing Damage Exclusion is a sufficient basis on which defendant properly denied the tender. Thus, it is unnecessary for us to discuss any of the other sections of the Policy, including the Deemer Provision on which the trial court also relied, that would support defendant's denial of coverage.

*3. Additional Insureds*

Plaintiff alleged she was the assignee of claims against defendant held by ATMI, HPJ, and C&A that she received as part of her settlements with them. She argues she succeeded to the rights of HPJ and C&A as additional insureds under the Policy. This claim has no merit.

The Additional Insured endorsement provides coverage under defined circumstances only for "'property damage' caused by an 'occurrence' under Coverage A not otherwise excluded in the policy to which this Endorsement applies." As discussed above, coverage is excluded under the Pre-existing Damage Exclusion.

In addition, coverage is limited to "ongoing operations performed by the Named Insured for the Additional Insured on or after the effective date of this Endorsement." The record conclusively demonstrates C&A's work on the Project predates the effective date of the Policy.

Thus, there is no coverage for any alleged additional insureds.

10

*4. Equitable Contribution*

Plaintiff argues there is a triable issue of material fact as to whether she, as assignee of Mt. Hawley, which defended C&A, is entitled to equitable contribution. She contends we must look to see if there was potential coverage at the time defendant denied the tender, not whether there is coverage "based on all of the facts now known by" defendant.

Coverage under the Policy is an element of a cause of action for equitable indemnity. (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1386.) As discussed above, there was no potential for coverage when defendant denied the tender. Thus, this claim fails. (See *Safeco Ins. Co. of America v. Superior Court* (2006) 140 Cal.App.4th 874, 879, 881.)

*5. Evidentiary Objections*

Finally, plaintiff complains the court overruled her objections to portions of the evidence defendant submitted in support of its motion for summary judgment without any analysis. Plaintiff did not set out the 26 objections or explain why overruling them was error, as was her burden. Thus, she forfeits this claim.

In addition, "an erroneous evidentiary ruling requires reversal only if 'there is a reasonabl[e] probability that a result more favorable to the appealing party would have been reached in the absence of the error. [Citation.]' [Citations.]" (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449.) Plaintiff failed to make this showing. We have reviewed the objections and the evidence to which they were directed and found nothing that would change the ruling on the motion for summary judgment.

11

## DISPOSITION

The judgment is affirmed.  Defendant is entitled to costs on appeal.


                                        THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.