NATIONAL WASTE ASSOCIATES, LLC *v.* TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA*

Superior Court, Judicial District of Hartford

File No. CV-07-5013789-S

Memorandum filed June 20, 2008

*Yamin & Grant, LLC,* for the plaintiff.

*Litchfield Cavo, LLP,* for the defendant.

---

* Affirmed. *National Waste Associates, LLC* v. *Travelers Casualty & Surety Co. of America,* 294 Conn. 511, 988 A.2d 186 (2010).

DUBAY, J.

I

FACTS

The plaintiff, National Waste Associates, LLC (National Waste), filed its two count complaint dated September 25, 2007, against the defendant, Travelers Casualty and Surety Company of America (Travelers). The first count, sounding in breach of contract, alleges that National Waste purchased an employment practices liability insurance policy (policy) from Travelers covering the period of February 15, 2007, through February 15, 2009, which would insure National Waste against damages and defense costs arising out of claims made for wrongful employment practices. On May 12, 2007, a lawsuit was brought against National Waste by a former employee. National Waste alleges that it promptly notified Travelers of the underlying action, but Travelers has refused to defend the suit or to indemnify National Waste for expenses arising out of the suit. In the first count, National Waste alleges that this is a breach of Travelers' obligations under the policy. In the second count, National Waste seeks a declaratory judgment determining its rights under the policy.

On November 16, 2007, Travelers filed a motion for summary judgment alleging that it has no duty to provide coverage under various provisions of the policy because the underlying action arises out of "facts, transactions and events which were alleged [w]rongful [a]cts and which at least one of the insured's executive officers, including its managing owner, had knowledge of prior to the [p]olicy's February 15, 2006 [c]ontinuity [d]ate."

In its memorandum in support of its motion for summary judgment, Travelers alleges that the plaintiff in the underlying case, the former employee, was party

to an action involving National Waste in front of the department of labor, employment security appeals division board of review, in 2005, which included a motion to open the case by National Waste. National Waste's failure to disclose this action before the employment security appeals division on its application for employment practices liability insurance is Travelers' basis for denying coverage under several policy provisions.

Exclusion five of the policy states: "This [l]iability [c]overage shall not apply to, and the [defendant] shall have no duty to defend or to pay, advance or reimburse [d]efense [e]xpenses for, any [c]laim . . . based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or [w]rongful [a]ct underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any [i]nsured as of or prior to the applicable [p]rior and [p]ending [p]roceeding [d]ate set forth in ITEM 5 of the [d]eclarations for this [l]iability [c]overage . . . ." Travelers argues that the action before the employment security appeals division is an "administrative proceeding" under the terms of exclusion five and argues that, therefore, it has no duty to defend or to reimburse the underlying suit.

Exclusion six of the policy states: "This [l]iability [c]overage shall not apply to, and the [defendant] shall have no duty to defend or to pay, advance or reimburse [d]efense [e]xpenses for, any [c]laim . . . for or arising out of facts, transactions or events which are or reasonably would be regarded as a [w]rongful [a]ct, about which any [e]xecutive [o]fficer had knowledge prior to the applicable [c]ontinuity [d]ate set forth in ITEM 5 of the [d]eclarations for this [l]iability [c]overage . . . ." Travelers argues that the underlying suit arises out of

a "[w]rongful [a]ct"[1] that was known by the manag-
ing owner.

Condition U of the policy provides in relevant part:
"In the event that any statement or representation in
the [a]pplication is untrue with respect to any [l]iability
[c]overage, such [l]iability [c]overage shall be void and
of no effect whatsoever, but only with respect to . . .
any [i]nsured [o]rganization, if the person who signed
the [a]pplication knew that the statement or representa-
tion was untrue." Travelers argues that National Waste's
president, who signed the employment practices liabil-
ity insurance application, falsely stated that there had
not been any employment related administrative pro-
ceedings made against National Waste during the pre-
ceding three years.

## II

## DISCUSSION

"Summary judgment is a method of resolving litiga-
tion when pleadings, affidavits, and any other proof
submitted show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law. . . . The motion for sum-
mary judgment is designed to eliminate the delay and
expense of litigating an issue when there is no real issue

---

[1] The term "[w]rongful [a]ct" is defined in the policy at § II (W). " 'Wrongful
[a]ct' means:

"1. a [w]rongful [e]mployment [p]ractice occurring in the course of or
arising out of a [c]laimant's employment, application for employment or
performance of services with the [i]nsured [o]rganization;

"2. a [w]rongful [e]mployment [p]ractice by an [i]nsured [p]erson in his
or her [o]utside [p]osition occurring in the course of or arising out of an
[o]utside [c]laimant's employment, application for employment or perfor-
mance of services with an [o]utside [e]ntity; or

"3. a [t]hird [p]arty [w]rongful [a]ct, if ITEM 5 of the [d]eclarations indi-
cates that [t]hird [p]arty [w]rongful [a]ct [c]overage has been purchased."

The policy goes on to define "[w]rongful [e]mployment [p]ractice," which
includes, among other things, wrongful termination and invasion of privacy,
which are at issue in the underlying complaint.

to be tried." (Citations omitted.) *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). "However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; internal quotation marks omitted.) *Kakadelis* v. *DeFabritis*, 191 Conn. 276, 282, 464 A.2d 57 (1983).

"[S]ummary judgment is appropriate only if a fair and reasonable person could conclude only one way. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 815, 830 A.2d 752 (2003). "[T]he genuine issue aspect of summary judgment requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002).

"With the growth of employers' liability for discrimination, retaliation, harassment, wrongful termination, and other, similar torts committed against employees (torts not involving physical injury and therefore not preempted by workers' compensation), demand has grown for 'employment practices liability' insurance."

*Krueger International, Inc.* v. *Royal Indemnity Co.*, 481 F.3d 993, 994 (7th Cir. 2007). Employment practices liability insurance "offers protection to employers for wrongful employment practices, such as discrimination, wrongful termination, and sexual harassment. Employees increasingly are seeking legal remedies for perceived wrongs in the workplace, but traditional insurance products limit coverage for these claims." L. K. Chaney, "Employment Practices Liability Insurance," 30 Colo. Law. 125 (July, 2001).

The employment practices liability insurance policy is a type of "claims-made" or "claims first made" insurance. Section 38a-327-1 (a) of the Regulations of Connecticut State Agencies defines a " '[c]laims-made policy' " as "an insurance policy or an endorsement to an insurance policy that covers liability for injury or damage that the insured is legally obligated to pay (including injury or damage occurring prior to the effective date of the policy, but subsequent to the retroactive date, if any), arising out of incidents, acts or omissions, as long as the claim is first made during the policy period or any extended reporting period." "[T]he purpose behind 'claims made' insurance [is] 'to limit [the insurer's] liability to a fixed period of time.' *United States* v. *A.C. Strip*, 868 F.2d 181, 187 (6th Cir. 1989). This increased certainty permits an insurer to charge lower premiums for this particular species of policy. See *Calocerinos & Spina Consulting [Engineers] P.C.* v. *Prudential Reinsurance Co.*, 856 F. [Sup.] 775, 777–78 (W.D.N.Y. 1994)." *Zunenshine* v. *Executive Risk Indemnity, Inc.*, United States District Court, Docket No. 97 Civ. 5525 (MBM), 1998 WL 483475, *5 (S.D.N.Y. August 17, 1998).

"An occurrence policy is one in which the event or cause giving rise to liability must occur during the policy term as a precondition to coverage, without regard to the date of discovery of the event or cause. . . . In

other words, the peril insured is the occurrence itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. . . .

"In contrast, a claims made policy is one in which coverage is conditioned on a claim having been asserted against the insured during the policy period. . . . A claims made and reported policy requires that the claim against the insured, and the report of such claim to its carrier, occur within the same policy period as a precondition to coverage. . . . In this regard, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place. . . .

"The reporting requirement of a claims made policy . . . eliminate[s] an insurer's tail exposure by minimizing the time between the insured event and the payment. . . . Because the reporting requirement provides insurers greater certitude as to their liability exposure, an insured [under a claims-made policy] pays a lesser premium, and receives broader coverage than under an occurrence policy because conduct occurring before the policy term is covered. . . . In this regard, the reporting/notice requirement in a claims made policy is considered [a] valid condition . . . precedent and not just [a] technical requirement. . . . Coverage under a claims-made policy occurs when a claim is made and reported during the specified policy period. . . . That is because, as courts have repeatedly recognized, the essence of a claims made policy is notice to the carrier within the policy period. . . .

"Given the purpose and function of the reporting requirement in a claims made policy, such reporting requirements are strictly construed. . . . In this regard, numerous courts have held that excusing a delay in notice beyond the claims made policy period would

alter a basic term of the insurance contract." (Citations omitted; internal quotation marks omitted.) *Executive Risk Indemnity, Inc.* v. *Chartered Benefit Services, Inc.*, United States District Court, Docket No. 03-C-3224, 2005 U.S. Dist. LEXIS 15411, *16–*19 (N.D. Ill. July 29, 2005).

The defendant argues, in its memorandum in support of its motion for summary judgment that "[p]olicy exclusion [five] bars coverage for any claim that in any way relates to any fact or situation alleged in any prior administrative proceeding, and the underlying claim here involves the same facts and situation as those that were the subject of administrative proceedings involving the [former employee] that took place prior to the [p]olicy's February 15, 2006 [p]rior and [p]ending [p]roceeding [d]ate . . . ." Exclusion five of the policy states: "This [l]iability [c]overage shall not apply to, and the [defendant] shall have no duty to defend or to pay, advance or reimburse [d]efense [e]xpenses for, any [c]laim . . . based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or [w]rongful [a]ct underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any [i]nsured as of or prior to the applicable [p]rior and [p]ending [p]roceeding [d]ate set forth in ITEM 5 of the [d]eclarations for this [l]iability [c]overage . . . ."

In *Specialty Food Systems, Inc.* v. *Reliance Ins. Co.*, 45 F. Sup. 2d 541, 542 (E.D. La.), aff'd, 200 F.3d 816 (5th Cir. 1999), the plaintiff, Specialty Food Systems, Inc. (Specialty Food), sought a declaratory judgment that its claims first made insurance policy covered an age discrimination suit made by a former employee. Specialty Food terminated the employment of Louise Davis on July 21, 1997. Id. On November 3, 1997, Davis

filed a claim against Specialty Food with the Equal Employment Opportunity Commission (EEOC). Specialty Food received notice of the claim on November 7, 1997. Id. Davis then filed suit against Specialty Food on December 22, 1997, and Specialty Food informed the defendant, Reliance Insurance Company, of the suit on January 21, 1998. Id.

The court examined the definition of the term " 'claim' " to determine whether the EEOC charge was a claim under the policy. Id., 543. The policy in *Specialty Foods Systems, Inc.*, defined a claim as "any written demand or notice received by an [i]nsured from a person or from any administrative agency advising that it is the intention of a person to hold the [i]nsured responsible for the consequences of a [w]rongful [e]mployment [p]ractice and includes any demand received by an [i]nsured for damages and/or the service of suit." (Internal quotation marks omitted.) Id. The court granted the defendant's motion for summary judgment and denied Specialty Food's motion seeking coverage for the age discrimination suit. Id., 544. "The [c]ourt is therefore compelled to apply the plain language of the policy and find that its definition of claim encompasses the EEOC notice in question." Id.

Similarly, in *Munsch Hardt Kopf & Harr, P.C.* v. *Executive Risk Specialty Ins. Co.*, United States District Court, Docket No. 3:06-CV-01099, 2007 U.S. Dist. LEXIS 16647 (N.D. Tex. March 8, 2007), the plaintiff, Munsch Hardt Kopf & Harr, P.C. (Munsch Hardt), obtained an employment practices liability insurance policy from the defendant, Executive Risk Specialty Insurance Company (Executive Risk). Id., *1. A Munsch Hardt employee filed a charge of discrimination with the Texas commission on human rights and the EEOC. Id., *2. The employee was later notified by the EEOC of her right to sue and the employee brought suit in state court. Id., *3. Executive Risk denied coverage of the

state court suit because Munsch Hardt failed to notify Executive Risk of the EEOC charge. Id. The court granted Executive Risk's motion for summary judgment based on a strict reading of the contract terms and Munsch Hardt's failure to give notice of the EEOC charge. Id., *7.

In *ML Direct, Inc.* v. *TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 140, 93 Cal. Rptr. 2d 846 (2000), the plaintiff ML Direct, Inc. (ML Direct), appealed the summary judgment rendered in favor of the defendant, TIG Specialty Insurance Company (TIG), finding no coverage in a declaratory relief action. ML Direct purchased a directors and officers liability policy (policy) from TIG. "The policy's prior litigation exclusion stated: 'This insurance does not apply to any [c]laim made against any [i]nsured arising out of any of the following . . . Any litigation, proceeding, or administrative act or hearing brought prior to or pending as of the [p]rior or [p]ending [l]itigation [d]ate as shown in Item 8 of the [d]eclarations, as well as any future litigation, proceeding, administrative act or hearing based upon any such pending or prior litigation, proceeding, administrative act or hearing or derived from the essential facts or circumstances underlying or alleged in any such pending or prior litigation, proceeding, administrative act or hearing.' " Id., 142.

The National Association of Securities Dealers (NASD) filed a disciplinary complaint against several securities dealers alleging fraudulent and deceptive securities sales practices. Id., 142–43. One of ML Direct's executives was identified as a selling security holder of her personal shares of some of the suspect securities. Id., 143.

The executive and ML Direct were named as defendants in a civil complaint, the Petit action, based in part on the NASD complaint and a later Securities and

Exchange Commission (SEC) complaint, in which ML Direct and its executive were not named. Id. TIG denied coverage on the ground that the NASD and SEC complaints were pending before the prior litigation date. The court held: "The Petit action expressly alleged that it was based on the SEC and NASD complaints and the factual relationship between all three pleadings is not disputed. Since the Petit action was based on the SEC and NASD complaints, the exclusion applies." Id., 146. The court noted that the policy "applies to any prior litigation or proceedings which bear the requisite factual relationship to a claim made during the policy period." Id. "In determining whether a prior litigation clause excludes coverage, courts have focused on whether there was a sufficient factual nexus between the two lawsuits. . . . The coverage does not depend upon the pleader's art but rather upon underlying facts." (Citation omitted; internal quotation marks omitted.) *Pereira* v. *Cogan*, United States District Court, Docket No. 04 Civ. 1134 (LTS), 2006 U.S. Dist. LEXIS 49263, *14 (S.D.N.Y. July 12, 2006).

National Waste argues in response that the phrase "administrative proceeding" is not defined in the policy and that, therefore, "the meaning of the phrase in the context of the [employment practices liability insurance] [p]olicy is ambiguous and raises a genuine question of material fact which prohibits entry of summary judgment."

The interpretation of language in an insurance policy is a question of law suitable for summary judgment. "The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." (Internal quotation marks omitted.) *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 599 n.7, 840 A.2d 1158 (2004).

National Waste is correct that the term "administrative proceeding" is not defined in the insurance policy, but Travelers' interpretation of the unemployment benefits hearing as an administrative proceeding is a commonsense interpretation of the term. Terms in an insurance policy "should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 400, 757 A.2d 1074 (2000). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 19, 860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005).

Connecticut courts have considered proceedings involving unemployment compensation to be administrative proceedings. "The 'fact-finding supplement' in this case, containing the alleged defamatory statement relied upon by the plaintiff, appears to serve the same function in the *administrative proceeding* before the unemployment security division as that of pleadings and similar documents in court proceedings." (Emphasis added.) *Petyan* v. *Ellis*, 200 Conn. 243, 252, 510 A.2d 1337 (1986). "General Statutes §§ 31-240 through 31-249f set forth the procedures for determining claims for unemployment compensation benefits. Claims are initially presented to an examiner who makes an administrative determination of the claimant's eligibility." *Berger* v. *Tonken*, 192 Conn. 581, 583–84, 473 A.2d 782 (1984). "The employment security administrative appellate system established pursuant to General Statutes § 31-237b provides for an employment security board

of review and a referee section which are separate and apart from the administrator of the unemployment act." *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 2, 434 A.2d 293 (1980). "Moreover, we note that [a]s a general rule, [t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Internal quotation marks omitted.) *Latina* v. *Administrator, Unemployment Compensation Act*, 54 Conn. App. 154, 159, 733 A.2d 885 (1999).

National Waste further argues that the prior litigation exclusion is not triggered by the former employee's claim for unemployment compensation because the policy does not provide coverage for such events "and it makes no sense that the [p]olicy's prior litigation exclusion would be triggered by the occurrence of prior uncovered events." The purpose of the prior litigation exclusion provision is so that insurance companies can be apprised of events that might blossom into a covered event during the policy period. The "prior and pending proceeding date" is also known as the "retroactive date." Section 38a-327-1 (e) of the Regulations of Connecticut State Agencies defines " '[r]etroactive date' " as "a date concurrent with the effective date of the policy or with the effective date of coverage for a new operation or location added to the policy, or a specified date prior to the effective date of the policy upon which the insurer and insured agree in the policy that coverage will be applicable." "[T]he major drawback from the insurer's standpoint is that it may face exposure for wrongful acts performed in the past, not just during the policy period, and, therefore, it is not uncommon for the policy to limit the time period of coverage for prior acts by including a retroactive date." *American Home Assurance Co.* v. *Abrams*, 69 F. Sup. 2d 339, 347

(D. Conn. 1999). "[A] 'retroactive date' provision . . . restrict[s] coverage to claims based on incidents that occurred after a certain date. Such a provision eliminates the risk that an insurer, by issuing a claims-made policy, would assume liability arising from incidents that occurred before the policy's effective date, but remained undiscovered or caused no immediate harm." *Hartford Fire Ins. Co.* v. *California*, 509 U.S. 764, 771, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993). "Insurers asked to issue claims-made policies protect themselves against liability for old occurrences by including a 'retroactive date' specifying the earliest occurrence to be covered, no matter when the claim is made." *National Cycle, Inc.* v. *Savoy Reinsurance Co.*, 938 F.2d 61, 62 (7th Cir. 1991). "To permit an insured to recover for claims arising from the same fact[s], circumstance[s], situation[s], transaction[s], event[s] or [w]rongful [acts] alleged in a pending lawsuit or made the subject of a prior notice given to another insurer would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed. [*United States* v. *A.C. Strip*, supra, 868 F.2d 187]." (Internal quotation marks omitted.) *Zunenshine* v. *Executive Risk Indemnity, Inc.*, supra, 1998 WL 483475, *5. "Because insurance policies such as these are designed to insure against fortuities, a fraud is worked when they are misused to insure a certainty." *Inland Waters Pollution Control, Inc.* v. *National Union Fire Ins. Co.*, 997 F.2d 172, 179 (6th Cir. 1993).

The defendant's motion for summary judgment is granted.